ELOF PIERSON, Respondent, v CITY OF NEW YORK, Appellant.

First Department, November 10, 1981

APPEARANCES OF COUNSEL

*Joseph Kiley* of counsel *(Milton Weinberg* and *Ronald E. Sternberg* with him on the brief; *Allen G. Schwartz, Corporation Counsel,* attorney), for appellant.

*Alan J. Firestone* of counsel *(Donald L. Marcovitz* with him on the brief; *Firestone, Marcovitz & Harris* and *Kravet & Hoefer,* attorneys), for respondent.

**OPINION OF THE COURT**

SANDLER, J. P.

On April 7, 1976 plaintiff, then a 61-year-old man, sustained injuries when he fell on the sidewalk in front of 202 West 42nd Street in New York City. A police officer responding to the scene of the accident noted in his report that the plaintiff had slipped on "slippery cream" on the

sidewalk and struck his leg on the building ledge. The report recorded the name and address of a witness to the event.

Plaintiff was immediately hospitalized. His injuries were diagnosed as a fracture of the femur. He underwent surgery on April 14, 1976 and remained in the hospital until July 24, 1976. His period of hospitalization was thus some 108 days.

On August 27, 1976, some 142 days after the accident, and 34 days after his discharge from the hospital, plaintiff, without seeking prior judicial approval, served a notice of claim on the city. The notice alleged multiple injuries which were attributed to a cracked and unsafe sidewalk.

On April 11, 1977, plaintiff appeared at a controller's hearing. Thereafter plaintiff served the city with a summons on April 12, 1977, and a verified complaint on September 29, 1977. In its answer dated March 9, 1978, the city asserted as a special defense plaintiff's failure to serve a notice of claim in accordance with the requirements of section 50-e of the General Municipal Law.

At no time prior to the service of this answer did the city, or any of its agents, inform plaintiff or his counsel that the notice of claim was untimely and judicially unauthorized.

On October 7, 1980, plaintiff moved to strike the city's special defense. Special Term granted the motion to strike, finding that the court had the power to permit the filing of a late notice where the delay would not substantially prejudice the defendant and that the claim was filed within a reasonable time after plaintiff was discharged from the hospital. We agree.

Preliminarily it seems free from doubt that if plaintiff had applied to the court for an extension of time at the time the notice of claim was served, the motion would have been appropriately granted. The plaintiff was hospitalized for a period of 108 days following the accident giving rise to the lawsuit, a period substantially in excess of the 90 days stipulated in section 50-e (subd 1, par [a]) of the General Municipal Law. The notice was served only 34 days after his discharge, and about two months after the expiration of the 90-day period. So brief a period of delay under such

circumstances surely invites sympathetic consideration under the more flexible criteria set forth in the 1976 amendments to section 50-e of the General Municipal Law, one of which explicitly lists the physical incapacity of the plaintiff during the relevant period.

Moreover this is not a situation in which the city first learns of an unreported accident many months later at a time when investigation has been rendered difficult or impractical by the lapse of time. Here a police officer responded immediately to the scene of the accident, conducted an investigation, and listed the name and address of an apparent witness to the event. The possibility of substantial prejudice under these conditions is minimal, indeed nonexistent. Nor is it inappropriate to observe that the city apparently did not respond to the notice of claim for a period of some seven and a half months when it conducted a controller's hearing and deposed the plaintiff. This extended period of self-imposed delay is more likely to have been prejudicial, and with less justification, than the limited delay attributable to the plaintiff.

The critical questions remaining are whether the court has the power to approve an application after the expiration of the statutory period to commence a lawsuit with regard to a previously served late notice of claim, and if the power exists, whether it was properly exercised under the circumstances presented.

As to the court's power, it is clear that the relevant language in subdivision 5 of section 50-e of the General Municipal Law was redrafted in the 1976 amendments to delete the previous statutory requirements that such a motion must be made prior to the expiration of the period for commencing a lawsuit, and prior to the commencement of the lawsuit. The circumstances are compelling that this deletion was purposeful.

Prior to the 1976 amendments, subdivision 5 of section 50-e provided with regard to motions for leave to file late notices of claim: "Application for such leave must be made within the period of one year after the happening of the event upon which the claim is based, and shall be made prior to the commencement of an action to enforce the claim".

This language was redrafted in 1976 to provide:

"Upon application, the court, in its discretion, may extend the time to serve a notice of claim specified in paragraph (a) of subdivision one. The extension shall not exceed the time limited for the commencement of an action by the claimant against the public corporation * * *

"An application for leave to serve a late notice shall not be denied on the ground that it was made after commencement of an action against the public corporation."

In sharp distinction to the prior formulation, the present controlling statutory language quite plainly does not limit the period of time in which an application for authorization to file a late notice of claim may be made. The reason for this change is not difficult to determine. It resulted, as did other aspects of the 1976 amendments, from the decision of the New York Court of Appeals in *Camarella v East Irondequoit Cent. School Bd.* (34 NY2d 139).

In *Camarella (supra),* an infant was injured on the school grounds of the defendant school board. A notice of claim was filed without court authorization two days beyond the required 90-day period. After a trial resulted in a verdict for the plaintiff, defendant moved to set it aside on the ground that the notice of claim was untimely served. The plaintiffs moved to amend certain letters timely sent by their attorney so as to have them serve as the notice of claim required by section 50-e, and to be permitted to file a notice of claim *nunc pro tunc.*

In reversing the trial court which had granted the plaintiffs a new trial, the Appellate Division quoted from the then language of the General Municipal Law that relief from late filing may be obtained upon motion made within "'one year after the happening of the event upon which the claim is based, and shall be made prior to the commencement of an action to enforce the claim'". (See *Camarella v East Irondequoit Cent. School Bd.,* 41 AD2d 29, 31.) The Appellate Division went on to state (p 31): "The motion made by plaintiffs after the trial was not made within one year, nor was it made prior to the commencement of the action and it was, therefore, untimely on both counts." The Court of Appeals affirmed, noting also that

"neither the one-year limitation nor the requirement that the motion be made pretrial was observed and, accordingly, relief from late filing was unavailable." (34 NY2d, at p 142.)

The court went on to state (at p 142): "In concluding, we cannot but remark that in this case the harshness of section 50-e is once again laid bare * * * The need for legislative reconsideration of the harsher aspects of section 50-e is apparent".

It was this comment by the Court of Appeals in *Camarella (supra)* that led to the drafting of the proposals that were eventually enacted in the 1976 amendments to subdivision 5 of section 50-e of the General Municipal Law. (See Twenty-first Ann Report of NY Judicial Conference, 1976, p 287.) When the statutory language in the 1976 amendments quoted above is considered in the light of this history, it is obvious that the above-quoted changes were designed to eliminate the two limitations that had contributed to the harsh result in *Camarella*. The power of the court to grant relief under the circumstances here presented thus appears to be free from any doubt.

It is true that in several cases decided subsequent to the 1976 amendments the Appellate Divisions in the Third and Fourth Departments apparently came to a contrary conclusion. (See *Sarsick v Kibec,* 73 AD2d 751; *Moran v City of Albany,* 73 AD2d 1010; *Fraccola v City of Utica,* 77 AD2d 161.) An examination of the opinions in the first two of these cases decided, *Sarsick v Kibec* and *Moran v City of Albany,* strongly suggests that the attention of the courts had not been invited to the change in the statutory language. In *Fraccola,* the opinion did refer to the statutory changes. However, the discussion of the issue in *Fraccola* was dictum, and the court merely resolved the question by reference to the supposed authority of *Moran,* without analysis of the new statutory language or the circumstances which gave rise to the revised formulation.

The question remaining is whether Special Term appropriately exercised its discretion in dismissing the city's affirmative defense and in effect approving *nunc pro tunc* the late filing of notice in this case.

It is immediately apparent that the failure of plaintiff's counsel to have applied for judicial approval prior to the service of the notice of claim in no practical way affects the relevant factors discussed earlier. The brief, clearly excusable delay and the total absence of any likelihood of prejudice under the circumstances are in no way altered by counsel's omission. No doubt it would have been preferable if judicial approval had been sought in advance, although it may be noted that the statute does not explicitly impose such a requirement. When the compelling circumstances presented are considered in light of the fact that the law was amended to permit the court to act in precisely the situation of such an oversight by counsel, we see no tenable basis for disturbing Special Term's exercise of discretion.

The order of the Supreme Court, New York County (EVENS, J.), entered February 6, 1981, granting plaintiff's motion to strike the city's affirmative defense that plaintiff had failed to comply with the General Municipal Law, should be affirmed, without costs and without disbursements.

BLOOM, J. (dissenting). I take no issue with the comment of my brother SANDLER that the general recasting of section 50-e of the General Municipal Law was prompted by the observation of the Court of Appeals that "[t]he need for legislative reconsideration of the harsher aspects of section 50-e is apparent * * * in order that a more equitable balance may be achieved between a public corporation's reasonable need for prompt notification of claims against it and an injured party's interest in just compensation" *(Camarella v East Irondequoit Cent. School Bd.,* 34 NY2d 139, 142-143; see, also, Twenty-first Ann Report of NY Judicial Conference, 1970, p 286 *et seq.).* Indeed, *Adkins v City of New York* (43 NY2d 346), to which the old law was applicable although the case was finally decided after the new law became effective, illustrates, even more vividly, the harshness of section 50-e in its pre-1976 form. There a notice served by mail on the 90th day but not received until the 96th day was held to be ineffective.

Similarly, I do not quarrel with the conclusion in this case that, had leave to file a late notice been applied for on August 27, 1976, when the late notice was filed without

prior judicial approval, leave to file such late notice would have been warranted.

However, I do take issue with the conclusion that in this case leave to file the notice of claim *nunc pro tunc* and striking the city's first affirmative defense was warranted. A brief recital of the chronology of events will serve to illustrate the point. Plaintiff was injured on April 7, 1976. He remained hospitalized until July 24, 1976, a period beyond the 90 days prescribed for service of the notice of claim by section 50-e. He served a notice, without prior judicial approval on August 27, 1976. The comptroller's hearing was held on April 11, 1977 and on April 12, 1977 he commenced this action. Issue was joined on March 9, 1978 by the service of the city's answer setting forth as an affirmative defense the failure to serve the notice of claim as prescribed by law.

It may be asserted, perhaps with some justification, that up to this point plaintiff was unaware that the city was rejecting his notice as not timely served. With the service of the answer he was made aware of this situation. However, not until October 7, 1980 — some two and one-half years later, and four and one-half years after the occurrence of the accident — did he take action. Such laches is inexcusable and bars the right of plaintiff to the relief accorded him. On the basis of the determination here made by the majority, it is difficult to conceive of any case in which a late filing would not be entitled to be excused.

It may well be that the conceptual underpinning upon which section 50-e is bottomed is archaic and has no relevance to modern urban society where suits against a municipality comprise much of our overcrowded civil calendars. If that be so, the remedy is legislative action to repeal or amend the statute. The result should not be achieved by judicial emasculation.

I would reverse the determination of Special Term and deny the motion upon the ground that, as a matter of law, Special Term abused its discretion.

SULLIVAN, Ross and CARRO, JJ., concur with SANDLER, J.P.; BLOOM, J., dissents in an opinion.

Order, Supreme Court, New York County, entered on February 6, 1981, affirmed, without costs and without disbursements.