OPINION OF THE COURT
David S. Ritter, J.
This case marks the first time since implementation of the Individual Assignment System (IAS) that I have declared a *47 default, and stricken a party’s pleading, because of counsel’s failure to appear for trial scheduled more than two months earlier. Because I find counsel’s conduct in this case to be intentional and inexcusable, I conclude that the action taken was appropriate and necessary to further the intent of part 125, "Uniform Rules for the Engagement of Counsel” (22 NYCRR part 125), and in order to deter this type of conduct in the future. Accordingly, in the exercise of discretion, defendant’s motion to vacate the default is denied.
Part 125 established a new rule regarding the engagement of counsel that was effective on January 6, 1986, the date when IAS began. In pertinent part, the rule created a requirement that substitute trial counsel must be provided in certain instances. The text of subdivision (g) of section 125.1 (22 NYCRR) follows: "This subdivision shall apply where a date for trial of an action or proceeding is fixed at least two months in advance thereof upon the consent of all attorneys or by the court. In such event, the attorneys previously designated as trial counsel must appear for trial on that date. If any of such attorneys is actually engaged on trial elsewhere, he or she must produce substitute trial counsel. If neither trial counsel nor substitute trial counsel is ready to try the case on the scheduled date, the court may impose any sanctions permitted by law.”
The excuse offered for the default is that one lawyer from the firm representing the defendant had become engaged in a trial in an adjoining county on the day when this matter was scheduled to start.[1] Rather than arrange for another lawyer to handle this case, defendant’s counsel simply mailed an affidavit of engagement to plaintiff’s lawyer. It arrived the morning of April 20th, the same day this case was scheduled to begin. No copy of that affidavit was mailed to the court and no attempt was made to notify my office of the planned failure to appear. Indeed, if plaintiffs lawyer had not stopped at the *48 post office en route to the court, he would not have received the affidavit of engagement before he appeared that morning, and neither he nor I would have known why defense counsel was not there.
Had the attorney for the defendant contacted me about an engagement in an adjoining county, he would have been told that part 125 of the rules requires him to send another lawyer from the firm or to procure substitute counsel so that the case could go forward as scheduled. This is the first occasion since IAS, when a lawyer has simply failed to show up without even attempting to notify me of his plans. In all other instances counsel have communicated with the court and sought an adjournment, frequently citing engagement as the reason. Each has been told that either he or substitute counsel must be prepared to proceed or suffer the consequence of his failure to appear. Thus, this is not a situation where the lawyers representing defendant are being singled out or treated differently than any other law firm. In every jury case on my Trial Calendar, trial is scheduled to commence a minimum of two months in advance. Scheduling is done this way so that counsel must be ready to proceed, or have substitute counsel ready to do so, on the date fixed for trial. I am told that my practice represents a policy followed by most of the IAS Judges in this judicial district.
Under IAS, Trial Judges play a more direct role and bear greater accountability for the expeditious resolution of cases (see, Sawh v Bridges, 120 AD2d 74, 78). In my estimation, part 125 is a vital tool in meeting this responsibility. Without the ability to set down firm trial dates, I would not be able to efficiently schedule cases to prevent "downtime” — those occasions when no scheduled case is ready because lawyers are engaged elsewhere. The result is that lawyers must control their calendars so as to have someone available to cover all cases scheduled.
To be sure, there must be some flexibility in scheduling cases for trial. My practice is to first consult with effected counsel and attempt to arrive at a date convenient for all concerned. In fact, I routinely reschedule cases upon a request from counsel provided such request is made within a few weeks after the matter is first set down. After that, I will not recognize the engagement of counsel as a reason for delay.
The trial date in this case, April 20, 1987, was established after I consulted with the lawyers involved during a pretrial *49 conference on October 21, 1986, a full six months in advance. The attorney employed by the defendant’s law firm who attended the conference expressly consented to the date selected after looking at his diary. No request for an adjournment was made before the date scheduled for trial.
When this case was called for jury selection on the morning of April 20th, I was advised for the first time that counsel was engaged and was requesting an adjournment. Despite the fact that no attorney representing the defendant had answered the calendar call, I decided to ask my clerk to call the defense firm to give them an opportunity to cure their default by supplying a lawyer. Though I was not required to do this by part 125 of the rules, I wanted to be sure that the defense firm had an opportunity to change its plan and supply counsel before any sanction was imposed. My clerk was told by the defense firm that there was no attorney available to proceed on that date.
In fact, there were eight attorneys employed by the law firm on April 20th, only two of whom were engaged in trial on that day. Four of the eight covered pretrial conferences that morning (three of the conferences were in the same courthouse in Westchester County), while two other attorneys attended court-ordered examinations before trial. One of the lawyers, Michael Latini, was physically in the Orange County Courthouse and scheduled to conduct an examination before trial when he learned that the court was about to declare a default in this case.[2] He appeared in my chambers to report that he was in the courthouse and had heard that there was a problem with one of his firm’s cases. I told him what had occurred and suggested that he call his office for instructions pointing out that I expected that someone would cover this case and if that was not done, that I would impose an appropriate sanction. He left to make the call and then he reappeared, this time in the courtroom, where he addressed the court as follows:
"mr. latini: I was downstairs. I am Michael Latini from Mr. *50 Broccoli’s office. I was assigned to come here today and conduct an examination before trial in another matter. I was downstairs. I was informed by an attorney passing by that this Romer matter had come up, as you just described it, and told me I should hurry up here and see, which I then did. That is basically the extent of my knowledge of both the case itself and the events leading to this morning. I am sure that the office would not want me to represent them in the trial of the matter based on my limited experience. However, I am present here. There is no denying that, Your Honor.
"the court: Well, I am not going to force you to do anything. As I said to you I guess it was 20 minutes or more ago, you should perhaps call your office. Have you done so?
"mr. latini: I have called the office. I spoke to the same person.
"the court: If you wish to do it, I certainly will permit you to go down and begin jury selection with Mr. Goldberg in this case and appear for the Louis Broccoli office. I am not going to order you to do that, sir. If Mr. Broccoli chooses not to secure the services of some lawyer who is here for the purpose indicated on a case that has been marked for trial, so be it. We will proceed in the usual fashion. That is a judgment that he makes at his peril in the view of the provisions of Part 125. I simply cannot run a calendar with cases marked well in advance and a minimum period of 60 days hence and expect that lawyers will come in and tell me that they have become engaged in some other court. It just doesn’t work, and I can’t do the scheduling that I have got to do in order to keep busy myself and in order to move cases. That is a uniform policy that I have employed against both plaintiffs and defendants with no exceptions. And certainly Mr. Broccoli is not singled out. I am disappointed that he didn’t even see fit to make an effort to have somebody here today. You are physically in the building.
"mr. latini: Yes, Sir.
"the court: If you wish to go ahead and represent your law office in this case, that certainly is fine with me. If you are instructed not to or choose not to, then Twill consider that an intentional default on the part of the Broccoli office. What is your pleasure?
"mr. latini: Mr. Broccoli himself is out on trial in Sullivan County. There is no other attorney in the office when I called this morning. First I spoke to Mr. Abítale. He runs the calendar.
*51 "the court: Mr. Latini, did you want a few more minutes to try and call Mr. Broccoli himself in Sullivan County or whoever you think you ought to call, or are you ready to tell me your position right now?
"mr. latini: I would certainly prefer if Your Honor would grant me a few minutes to try and contact Mr. Broccoli and let him make the decision how to proceed.
"the court: Certainly. You may go ahead and do that.
"(Recess declared by the Court.)
"(The proceedings continued in open court with all parties present.)
"the court: Gentlemen, how do you stand regarding Romer?
"mr. latini: Your Honor, thank you, first of all, for giving me the time to seek out the instructions that I needed. I attempted to contact Mr. Broccoli in Supreme Court in Sullivan County and could not reach him. I contacted Allan DiSalvo, the attorney in charge of this case, in Kingston Supreme Court. He instructed me to proceed with the deposition for which I was sent here, and the Court will do what it sees fit in the matter, with all due respect.
"the court: That is an intentional default on the part of the Broccoli office. I will mark it as an intentional default. I will strike the answer for failure to proceed.”
The moving papers are replete with misleading and inaccurate factual statements, apparently intended to portray counsel’s untenable actions as innocent and excusable. To the contrary, the record points to a blatant disregard of part 125 and an indefensible attitude on the part of counsel.
The most egregious misstatement in the moving papers is counsel’s contention that the decision to have Mr. Latini cover the examination before trial instead of the trial was prompted by a threat that the court would impose sanctions in whichever case was not covered. That simply is not true. Indeed, the attorney who was to conduct the examination before trial with Mr. Latini accompanied him to my chambers to see whether that matter should be rescheduled and the stenographer sent home. There was no suggestion that he would seek imposition of sanctions if Mr. Latini proceeded on this matter instead of the examination before trial, and no threats to impose such a sanction were made by this court, either express or implied. The decision to have Mr. Latini proceed with the examination *52 before trial instead of jury selection in this matter was obviously a deliberate decision made by the law firm motivated by reasons I will not speculate about.
Thereafter, counsel was afforded yet another opportunity to take corrective action in this matter. I had begun the trial of a short case on Monday, April 20th. When that trial began, no other juries were selected and the next case scheduled for jury selection was the action that is the subject of this motion.[3] The liability proof in the case on trial (DeFini v Caldors) was completed by midday on the 20th and the jury was charged. It rendered a liability verdict that afternoon. Because the case had moved more rapidly than plaintiff’s counsel anticipated, he was not prepared to offer medical evidence until Wednesday. When I learned this, I asked my clerk to notify the plaintiff in this case that I would receive proof at inquest on the following day. My law secretary also called the defense firm to alert them to that scheduling so that they could supply a lawyer to participate in the inquest if they chose to do so.[4]
*53 Unknown to me, defense counsel’s case in Ulster County had settled the afternoon of April 20th and he was available to proceed. However, he did not communicate with my chambers to indicate that he wished to participate the next morning, as he was given the opportunity to do. Instead, Mr. DiSalvo first called sometime late in the morning of April 21st after the inquest had been completed.
There is no doubt that counsel’s behavior in this case falls far short of what is contemplated by part 125. This conduct was not the product of unforeseeable or other excusable circumstances, but was instead an untenable effort to dictate this court’s schedule for the convenience of counsel. While I am mindful of the public policy favoring the resolution of lawsuits on the merits, this type of conduct is inexcusable and warrants the extreme sanction of dismissal (see, Saleh v Saleh, 121 AD2d 822).[5]
It should be noted that the municipal defendant in this case is not the real party being penalized by the sanction imposed herein. Rather, it is the insurance carrier who has retained the defense firm who shall suffer the consequences of counsel’s conduct. One thing is certain. Part 125 must be construed as authorizing the extreme sanction here imposed for any lesser sanction would not, in my judgment, be sufficient for this court to retain control of its own Trial Calendar.
Based on the foregoing defendant’s motion to vacate the default pursuant to CPLR 5015 is in all respects denied.

. The history of counsel’s engagement in Ulster County is illuminating. Trial was originally scheduled for December 1986. It was adjourned and then rescheduled by letter dated March 12, 1987 to commence on April 15th, a period less than 60 days thence. It would, of course, have been appropriate for counsel to report his long-standing April 20th engagement in Orange County to Justice Bradley in Ulster County Supreme Court. Apparently, he did not do so. Indeed, his engagement on the 20th was no reason for delay of the Ulster trial unless all lawyers in his firm were engaged. (22 NYCRR part 125.) Instead, he appeared for jury selection on April 15th and left that day knowing that the trial of the Ulster action would not commence until April 20th.

. The examination before trial that brought Mr. Latini to the Orange County Courthouse had been scheduled less than two weeks before when the lawyers in that case were permitted to pick convenient dates to conduct pretrial discovery. It is my practice to permit counsel to agree on discovery dates that suit their schedules rather than to establish the schedule myself. When Mr. Latini’s firm agreed to the April 20th examination, it was aware of the potential conflict created by the scheduling of the Ulster County case for April 15th.

. My clerk’s records reflect my trial schedule during the period in question. Burka v Roy-O. Laundry was begun on April 16th and settled the same day. The preceding day DeFini v Caldors was called in for jury selection. Selection was completed on April 16th and trial was begun on Monday, April 20th. Plaintiffs counsel was a lawyer named Ronald Rosenkranz, an attorney employed by an active plaintiff’s trial firm. For reasons that I cannot understand, Mr. Rosenkranz made an affirmation dated May 12, 1986, which has been submitted in support of this motion, in which he claims that on April 20th, "there were at least two additional juries that had been selected on other cases which were waiting to be tried before Judge Ritter. One of those cases was Gatt v Gramm, which was also being handled by our firm.” Not only were there no other juries selected in addition to the DeFini case, but jury selection in Gatt v Gramm did not begin until April 22nd. The DeFini trial was concluded with a verdict on April 23rd. Mr. Rosenkranz’s casual use of an affirmation resulting in a misrepresentation of fact is a discredit to him. While it is essential at times to stack up several juries in order to keep the court busy, that was not the situation when this case was called in for trial.

. Allan DiSalvo, the lawyer involved in both the Ulster County case and this action, writes: "It would appear therefore that the trial schedule of this Court would not have been effected had your deponent been allowed to commence jury selection on April 21, 1987.” No such request was ever made. Indeed when Justice Bradley was asked to call on April 20th to confirm Mr. DiSalvo’s engagement in Ulster County, he simply advised that Mr. DiSalvo would be available when the Ulster case was completed. Even though the Ulster trial settled on the afternoon of April 20th, Mr. DiSalvo waited until the following day to contact my chambers and then his call was received after the inquest in this case had been completed. Since we had notified his firm that the inquest would be held on April 21st, Mr. DiSalvo’s delay in contacting my chambers is hard to understand.

. I have not addressed the merits of the claimed defenses to this action because I find defense counsel’s conduct to be inexcusable (see, Montalvo v Nel Taxi Corp., 114 AD2d 494, 495), and because there is no evidence of a jurisdictional defect (see, Pierson v City of New York, 83 AD2d 128; cf., Cohen v Pearl Riv. Union Free School Dist., 51 NY2d 256).