MARY E. SAWH, Appellant, v GEORGE BRIDGES et al., Respondents.

Second Department, October 27, 1986

## APPEARANCES OF COUNSEL

*Morris J. Eisen, P. C. (J. Irwin Shapiro* and *Kenneth L. Gartner* of counsel), for appellant.

*Raymond G. Lawlor (David S. Heller* of counsel), for George Bridges, respondent.

*John F. Feeley (Thomas E. Paterson* of counsel), for Gene Bove and another, respondents.

## OPINION OF THE COURT

THOMPSON, J.

██ The issue presented for our determination on this appeal is whether Special Term abused its discretion by imposing the harsh sanction of dismissal for the plaintiff's failure to comply with certain orders of disclosure. We find that the conduct of the plaintiff's counsel in failing to permit discovery and inspection of a CAT scan of the plaintiff despite a notice for production and two prior court orders with respect thereto can properly be characterized as willful and contumacious. Accordingly, dismissal of the complaint was a proper exercise of discretion and the order appealed from should be affirmed.

The instant action was commenced to recover damages for personal injuries sustained by the plaintiff as a result of a three-vehicle collision which occurred on Hyland Boulevard in Staten Island on June 24, 1981. In 1982 the plaintiff came under the care of Dr. Joseph Mormino, a neurosurgeon, who performed a CAT scan of her lower back and diagnosed the plaintiff's condition as a herniated lumbar disc. Dr. Mormino submitted a report dated June 17, 1983, to the plaintiff's counsel in which he advised that the "CAT Scan of the lumbosacral spine revealed a calcified herniated disc at L3-L4".

On September 19, 1983, a neurological examination of the plaintiff was performed by a second physician, Dr. Ralph A. Olson, at the request of the defendant George Bridges. Dr. Olson concluded that there were "insufficient findings to indi-

cate any spinal nerve root compression signs to indicate a symptomatic herniated disc in the lumbar area". He further stated that the calcified herniated disc allegedly revealed by the CAT scan indicated "a long-standing lesion antedating the date of accident". Dr. Olson recommended, *inter alia,* that the CAT scan referred to by Dr. Mormino be forwarded to his office for evaluation.

Thereafter, the defendant Bridges served upon the plaintiff a notice for discovery and inspection of the CAT scan taken by Dr. Mormino *(see,* CPLR 3120 [a] [1] [i]). The plaintiff was directed to comply within 30 days. Receiving no response, counsel for the defendant Bridges, by letter dated November 8, 1983, advised the plaintiff's counsel that he was in default in complying with the notice to furnish the CAT scan. Rather than complying with the notice, the plaintiff's counsel proceeded to serve and file a note of issue and statement of readiness in which he falsely stated that all discovery proceedings had been completed. As a result, the defendant Bridges moved to strike the action from the Trial Calendar (22 NYCRR former 675.3, 675.4). By order dated February 27, 1984, Special Term (Kuffner, J.), granted the defendant Bridges' motion to the extent, *inter alia,* of directing the plaintiff to supply the defendant Bridges with the CAT scan. A copy of the order with notice of entry was served upon the plaintiff on March 6, 1984.

Upon the plaintiff's continued failure to comply with the notice and the order of February 27, 1984, the defendant Bridges, joined by the defendants Gene Bove and Anne Marie Messerole, again moved to strike the action from the Trial Calendar. The plaintiff's counsel in his affirmation in opposition to the motion alleged that an authorization for release of the CAT scan was being served upon the defendant Bridges' attorney simultaneously therewith even though the February 27, 1984 order had required the plaintiff to produce the actual CAT scan.

By order dated May 29, 1984, Special Term (Kuffner, J.) granted the defendants' motion to strike the action from the Trial Calendar in order to permit the defendants Messerole and Bove to have the plaintiff examined by a physician chosen by them. Apparently, the court determined that the authorization with respect to the CAT scan which the plaintiff's counsel alleged he had served constituted sufficient compliance with its prior order. A copy of the order was served upon the plaintiff on June 11, 1984.

The defendant Bridges' attorney, by letter dated August 2, 1984, again demanded the CAT scan, citing in support thereof the orders of February 27, 1984 and May 29, 1984, and stating that failure to comply with the demand would compel him to move to preclude or to dismiss.

Finally, by notice of motion dated August 28, 1984, the defendant Bridges, joined by defendants Bove and Messerole, moved pursuant to CPLR 3126 to dismiss the complaint by reason of the plaintiff's continued failure to produce the CAT scan. In his affirmation in opposition to the motion, the plaintiff's attorney revealed, for the first time, that the CAT scan in question had been allegedly stolen from a van on or about March 19 or March 20, 1984, and no other copies of the CAT scan film were in existence. The plaintiff's counsel did not indicate when he first learned of the alleged theft. It is clear, however, that the theft occurred over five months after service of the original notice for discovery and inspection and about two weeks after service of the order of February 27, 1984, which directed production of the CAT scan. More importantly, at the time the second motion to strike was made, the CAT scan was allegedly no longer available. Nevertheless, no allegation to that effect was made in the plaintiff's opposition papers.

By order dated September 21, 1984, Special Term (Kuffner, J.), granted the defendants' motion to dismiss the complaint. The court found the conduct of the plaintiff's counsel in failing to comply with the discovery notice and with the prior orders of the court to be "willful and contemptuous". It further found that the plaintiff's attorney had simply ignored the notice and two prior orders and had falsely stated in opposition to one of the prior motions that an authorization for production of the CAT scan was being furnished. This appeal ensued.

We do not believe that dismissal of the complaint upon the facts presented in the instant matter may be characterized as an abuse of discretion. Nor would it be appropriate, at bar, for this court to substitute its discretion for that of the Justice sitting at Special Term or to impose financial sanctions in lieu of dismissal. Accordingly, the order of Special Term dismissing the complaint pursuant to CPLR 3126 should be affirmed.

 the introduction of the Individual Assignment System (hereinafter the IAS) for processing civil actions in the trial courts of the State of New York demands that substantial

deference be accorded the discretion of the Trial Judge in compelling compliance with discovery demands. In order to further the purpose of the IAS system to impose direct accountability on both lawyers and Judges and thereby to encourage the expeditious resolution of cases, the Judges of the appellate courts should refrain from substituting their judgment for that of a Trial Judge who presumably is fully familiar with the history of the case and the conduct of the parties and their attorneys. Trial Judges should be accorded wide latitude to determine the appropriate sanctions for dilatory and improper attorney conduct. A Trial Judge should also be free to exercise his broad discretion in contemplation of matters before him and, absent a clear abuse of judicial discretion, he should be amply protected from judicial interference on an appellate level.

The determination urged by my dissenting colleagues would only serve to undermine the laudatory effort of the IAS to further the timely disposition of disputes. Although this matter arose prior to commencement of the IAS, the order under review seeks to remedy the precise evil which the IAS is designed to overcome. Moreover, the matter before us presents a factual pattern certain to be repeated on appeals arising under the IAS inasmuch as the same Judge ruled on each of the several motions at issue. Thus, if we follow the course suggested by the dissent in our determination of appeals arising under the IAS, the authority of the Trial Judge to structure the course of litigation will be greatly weakened. We would thereby be contributing to the failure of the IAS. The fact that the instant action predated the IAS does not warrant our undermining Special Term's discretion.

■ We recognize that absent a showing that the noncomplying party's conduct was willful or contumacious, the harsh sanction of dismissal of a complaint will generally not be warranted *(see, e.g., Anteri v NRS Constr. Corp.,* 117 AD2d 696; *Baumann v Dee,* 100 AD2d 504). Moreover, imposition of a sanction authorized by CPLR 3126 will be barred if the noncomplying party makes a showing that the particular disclosure sought is not possible *(see, Anteri v NRS Constr. Corp., supra; Ferraro v Koncal Assoc.,* 97 AD2d 429). However, a contrary result obtains in cases "where the disobedient party is responsible for making a previously possible disclosure impossible" *(Ferraro v Koncal Assoc., supra,* at p 429).

Turning to the facts of the matter before us, we adopt Special Term's characterization of the conduct of the plain-

tiff's counsel as willful and contemptuous. Therefore, sanctions pursuant to CPLR 3126 are warranted. The plaintiff's counsel had more than an ample opportunity to produce the CAT scan, which the defendants sought through disclosure, but failed to do so. His conduct in disregarding the notice for discovery and inspection and his further disregard of the order of February 27, 1984, directing production of the CAT scan made the "previously possible disclosure impossible". Nor did the plaintiff's attorney indicate at the time of the motion proceedings leading to the order of May 29, 1984, that the CAT scan was no longer in existence. The continuing course of deliberately evasive, misleading and uncooperative conduct and the determined strategy of delay practiced by the plaintiff's counsel with respect to the discovery proceedings deserve the most vehement condemnation. Had the plaintiff's attorney timely complied with the defendants' discovery demands, the CAT scan would have been available for inspection.

It should further be recognized that upholding the exercise of Special Term's discretion upon these facts would fit squarely within the recent Court of Appeals determination in *Zletz v Wetanson* (67 NY2d 711, 713). In partially affirming an order dismissing a complaint pursuant to CPLR 3126 the court stated "[w]here a party in these circumstances disobeys a court order and by his conduct frustrates the disclosure scheme provided by the CPLR, dismissal of the complaint is within the broad discretion of the trial court" *(supra,* p 713).

Admittedly, there is a conflict between the parties as to whether the authorization for release of the CAT scan was, in fact, delivered to the defendants. Special Term found that the plaintiff's counsel falsely stated that delivery of the authorization had been made. A copy of the authorization is contained in the record on appeal. Thus, the record is ambiguous as to the alleged falsehood. However, there is no doubt that the plaintiff's counsel was dilatory in complying with the notice and deliberately ignored at least one mandate of the court. The conduct of the plaintiff's attorney was clearly reprehensible and deserving of the sanction of dismissal.

In conclusion, while we recognize that dismissal of a complaint pursuant to CPLR 3126 is a harsh sanction, it is called for under the circumstances of this case. Imposition of financial sanctions as a condition of vacating the dismissal of the complaint is inappropriate *(cf. Williams v Coren,* 112 AD2d 419; *Renford v Lizardo,* 104 AD2d 717). The plaintiff's counsel has already exhibited a blatant disregard for the mandates of

the court. Less drastic action than dismissal would only serve to encourage dilatory conduct and reward an obstructionist approach to discovery proceedings. The IAS system requires a firm approach to this type of evasive behavior. We will thereby further the purposes of the IAS and the timely disposition of litigated matters.

Accordingly, the order appealed from should be affirmed, with costs.

BRACKEN, J. (concurring in part and dissenting in part). I cannot agree with the majority that dismissal of the plaintiff's action is required because of the misdeeds of her attorney. Although I do not condone the course of conduct engaged in by the plaintiff's counsel in this case, I believe that a remedy should be fashioned which would adequately sanction the attorney and prevent undue prejudice to the defendants without depriving the plaintiff, who is personally blameless, of her day in court. Accordingly, I would modify the order appealed from so as to preclude the plaintiff from offering any evidence at the trial regarding the CAT scan performed in 1983 of an alleged calcified herniated disc at L3-L4 of her lumbosacral spine. Further, if the defendants be so advised, I would allow them to submit the plaintiff to a new CAT scan, at her own expense, with a copy of that CAT scan, and any report made in connection therewith, to be furnished to the defendants. Finally, I would direct the plaintiff's attorney to personally pay to each defendant a financial sanction in the amount of $1,500.

In this personal injury action, the defendant Bridges served a proper notice for discovery and inspection of a CAT scan which had been performed upon the plaintiff by one of her doctors (CPLR 3120 [a] [1] [i]). However, the plaintiff's counsel apparently ignored the notice and proceeded instead to serve and file a note of issue and statement of readiness which incorrectly indicated that there were no outstanding discovery requests. As a result, the defendant Bridges moved to strike the action from the Trial Calendar, and Special Term (Kuffner, J.), by order dated February 27, 1984, granted the motion to the extent of directing the plaintiff to supply the defendant Bridges with the CAT scan, to be reviewed by his expert and then returned to the plaintiff. A copy of the order, with notice of entry, was duly served upon the plaintiff on March 6, 1984.

Upon the plaintiff's continued failure to comply with the notice and the subsequent order dated February 27, 1984, the

defendant Bridges, joined by the defendants Bove and Messerole, moved once again to strike the case from the Trial Calendar. In response to the motion, the plaintiff's counsel proffered an authorization for release of the CAT scan, although the prior order had required the plaintiff to produce the actual CAT scan. By order dated May 29, 1984, Special Term struck the case from the calendar in order to permit the defendants Messerole and Bove to conduct certain discovery unrelated to the CAT scan, although the court apparently determined that the furnishing of the authorization constituted sufficient compliance with its prior order.

The defendants thereafter moved pursuant to CPLR 3126 to dismiss the complaint by reason of the plaintiff's continued failure to produce the CAT scan. In his affirmation in opposition to the motion, the plaintiff's counsel disclosed, for the first time, that the CAT scan in question had been stolen on or about March 19 or 20, 1984, but counsel did not indicate when he had first learned of the theft. It is clear, however, that the theft occurred over five months after service of the original notice for discovery and inspection and about two weeks after service of the order of February 27, 1984, which directed production of the CAT scan. By order dated September 21, 1984, the court granted the motion and dismissed the complaint, determining that the conduct of the plaintiff's counsel had been "willful and contemptuous". The court found that the plaintiff's attorney had simply disregarded the notice and two prior orders, and had not furnished the authorization for production of the CAT scan as he had claimed to have done.

The conduct of the plaintiff's counsel in this case can properly be characterized as willful and contumacious, so as to warrant the imposition of a sanction pursuant to CPLR 3126 (see, e.g., Williams v Coren, 112 AD2d 419; Parascandola v Kaplan, 108 AD2d 738, 739; Kramme v Town of Hempstead, 100 AD2d 447, 451). However, Special Term's finding that counsel failed to comply with two prior orders is not supported by the record. While there is no doubt that the notice for discovery and inspection and the order directing production of the CAT scan were disregarded, the second order effectively discharged the plaintiff's counsel with respect to the CAT scan, upon his representation that an authorization for its release had been furnished to the defendants. Moreover, there is no evidence in the record demonstrating that the authorization was not furnished.

Nevertheless, I am mindful that the attorney's disregard of the notice and first order and his filing of a statement of readiness which incorrectly represented that disclosure had been completed, made the previously possible disclosure of the CAT scan impossible, because reasonably diligent compliance with either the notice or order would have enabled the disclosure to occur prior to the date on which the CAT scan was allegedly stolen *(see, Ferraro v Koncal Assoc.,* 97 AD2d 429). Moreover, by failing to promptly advise the defendants of the alleged theft, and leading them to believe that disclosure was still possible, counsel was responsible for a considerable amount of unnecessary motion practice.

Because it appears that Special Term misapprehended the extent of counsel's neglect, and because of the fact that long-established public policy favors resolution of actions on their merits *(see, Mineroff v Macy's & Co.,* 97 AD2d 535, 536), I conclude that the sanction of dismissal imposed in this case was unduly harsh, and I would modify the order so as to impose the less severe sanction of preclusion *(see,* CPLR 3126 [2]; *Olshansky v Ravera,* 107 AD2d 740). In addition, I view this as an appropriate case to impose a financial sanction against offending counsel *(see, Gabrelian v Gabrelian,* 108 AD2d 445, *appeal dismissed* 66 NY2d 741; *Mineroff v Macy's & Co., supra,* at p 536; memorandum of Off of Ct Admin, 1983 McKinney's Session Laws of NY, at 3014-3015, citing *Cockfield v Apotheker,* 81 AD2d 651).

I must also register my disagreement with my colleagues' conclusion that affirmance of the order dismissing the complaint is necessary in order to effectuate the expedient and efficient disposition of cases under the Individual Assignment System (hereinafter IAS). Although the statute (CPLR 3126) provides the trial court with broad discretion in fashioning penalties for failure to comply with discovery notices and orders *(see, Zletz v Wetanson,* 67 NY2d 711, 713), this court has not hesitated to act where, in our view, the imposition of a particular sanction by the trial court constituted an improvident exercise of its discretion *(see, Duffett v Duffett,* 114 AD2d 994; *Parascandola v Kaplan,* 108 AD2d 738, *supra; Baumann v Dee,* 100 AD2d 504). I am unable to find any evidence that the IAS was intended to abrogate or limit the power heretofore exercised by an intermediate appellate court to review discretionary rulings and, in appropriate cases to substitute its own discretion for that of a trial court. In fact, it has been suggested that appellate review is a necessary component of

the IAS, serving as a safeguard to correct abuses of discretion by Trial Judges (see, Siegel, Dec. 1985 [No. 312], NY St L Dig 3; Mar. 1986 [No. 315] NY St L Dig 2). I simply cannot agree that this court must ignore injustice in the interest of preserving the independence and authority of the trial courts and ensuring the success of the IAS.

WEINSTEIN and RUBIN, JJ., concur with THOMPSON, J.; BRACKEN, J., concurs in part and dissents in part, and votes to grant the defendants' motion only to the extent of precluding the plaintiff from offering any evidence at trial regarding a CAT scan performed in 1983 as to an alleged calcified herniated disc at L3-L4 of the plaintiff's lumbosacral spine, and, as so modified, to affirm the order appealed from, on condition that the plaintiff's attorney personally pays to each defendant the sum of $1,500 and the plaintiff submits to a new CAT scan at her own expense and furnishes a copy of said CAT scan and any reports made in connection therewith to the defendants, with an opinion in which LAZER, J. P., concurs.

Ordered that the order of the Supreme Court, Richmond County, dated September 21, 1984, is affirmed, with costs.