STATE UNIVERSITY CONSTRUCTION FUND, Appellant, v TURNER CONSTRUCTION COMPANY et al., Defendants, and BERTRAND GOLDBERG, Doing Business as BERTRAND GOLDBERG ASSOCIATES, Defendant and Third-Party Plaintiff-Respondent. DONALDSON ACOUSTICS COMPANY, INC., et al., Third-Party Defendants-Respondents, et al., Third-Party Defendant.

Third Department, July 23, 1992

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General (Cynthia F. Kruesi* and *Nancy A. Spiegel* of counsel), for appellant.

*Donohue, Sabo, Varley & Armstrong, P. C. (Bruce F. Huttner* of counsel), for defendant and third-party plaintiff-respondent.

*Peckar & Abramson, P. C. (Kevin D. Slakas* of counsel), for Turner Construction Company, defendant.

*Horigan, Horigan, Pennock & Lombardo, P. C. (Carrie Mc-Loughlin* and *Thomas V. Blaber* of counsel), for Sea Crest Construction Corporation, defendant.

*Warner & Joselson (Henry C. Joselson, Jonathon D. Warner* and *Maxine R. Fass* of counsel), for Donaldson Acoustics Co., Inc., third-party defendant-respondent.

*Carter, Conboy, Bardwell, Case, Blackmore & Napierski*

*(Christopher R. Lyons* and *Edward D. Laird, Jr.,* of counsel), for Polyshell Chemical Corp., third-party defendant-respondent.

## OPINION OF THE COURT

YESAWICH JR., J.

Alleging that delamination of the concrete stucco finish applied to the exterior walls of a tower within the health science facility on the State University of New York at Stony Brook campus in Suffolk County was occasioned by their breach of contract and negligence, plaintiff commenced this suit against tower architect Bertrand Goldberg, construction manager Turner Construction Company, and general contractor Sea Crest Construction Corporation. The action, commenced in 1983, seeks to recover the cost of repairing the tower, assertedly $2 million. After issue was joined, Goldberg commenced a third-party action against precast concrete panel subcontractor Grand Pre-Stressed Corporation, stucco subcontractor Donaldson Acoustics Company, Inc., and supplier of the bonding agent used to apply the stucco to the building, Polyshell Chemical Corporation.

In May 1987 plaintiff informed defendants and third-party defendants (hereinafter collectively referred to as defendants) that remedial work on the tower's exterior was in progress and that any party wishing to examine, inspect or conduct any tests with respect to such work should contact plaintiff immediately. Thereafter, based upon two separate site visits, an engineer hired by Turner to examine the condition of the tower's walls determined that destructive testing was appropriate. George Freeman, plaintiff's construction manager, stated at his deposition during the winter of 1987-1988 that about 50% of the stucco had been removed. In the spring of 1988 defendants began efforts to schedule physical examination of the tower. In July 1988, however, plaintiff informed them that, before they could gain access to the scaffold erected to facilitate the repairs, they would have to provide written releases and agree to provide plaintiff a copy of any written report produced by them. In August 1988 Goldberg served two notices of discovery and inspection on plaintiff, but was refused access to the scaffolding by plaintiff because it refused to agree to share its expert's report; Goldberg maintained that the report would be privileged *(see,* CPLR 3101 [d] [2]).

After apparently resolving issues relating to the breadth of

the releases, plaintiff informed defendants in September 1988 that an inspection scheduled for October 11, 1988 was canceled because the scaffolding would not be in place on that date; despite its assurance that it would "inform all parties as to a specific date shortly", in mid-October 1988 plaintiff informed defendants that no meaningful inspection could be made in the near future and that it would contact the parties with more definite information when it was received.

In May 1989 plaintiff informed the parties that the scaffold was up so that inspection could be had and that they should contact plaintiff to make arrangements. In response to their requests for access, plaintiff informed defendants in August 1989 that an additional release would have to be signed in favor of the new remedial contractor's surety before any inspection could take place. Goldberg informed plaintiff in September 1989 that inasmuch as plaintiff had recommenced remedial work on the tower, it was imperative that defendants gain access to it before delamination was completed. In October 1989, however, plaintiff informed defendants that the stucco skin of the tower had been completely removed. None of the parties, aside from plaintiff, had done the destructive testing necessary to determine the cause and extent of the delamination.

Thereafter, Goldberg served a notice of discovery and inspection on all parties seeking the reports or field observations of any experts concerning the tower's delamination. Turner moved for a protective order while Goldberg and Donaldson cross-moved against plaintiff pursuant to CPLR 3126 for an order precluding plaintiff from presenting any expert evidence at trial regarding the cause and extent of the tower's delamination. Other defendants submitted supporting papers. Supreme Court ordered that each party make available to the other parties the factual observations of their respective experts with the opinions deleted and all samples relating to the tower in their possession. Goldberg, Turner, Sea Crest, Donaldson and Polyshell appealed.

In August 1991 Polyshell and Donaldson moved for an order pursuant to CPLR 2221 granting leave to renew Goldberg's and Donaldson's cross motions for a preclusion order. The appeal of Supreme Court's earlier order was withdrawn. On the basis of the deposition and affidavit of a nonparty witness, Raymond Pearson, the president of the company initially hired to repair the tower—in which Pearson stated, *inter alia,* that Freeman, plaintiff's construction manager, had told him

that Pearson should "remember who the good and bad guys are in this", that Freeman intimated that Pearson's pending claim for extra work above contract price of the remedial job might be viewed more favorably if defendants were denied access to the scaffold, and that, as a result, Pearson refused to let anybody on the scaffold—Supreme Court granted the motion to renew and found that plaintiff "wilfully failed to allow access to the building at issue herein".

■ Supreme Court granted plaintiff's motion, based on Freeman's affidavit, to reconsider this decision but nevertheless affirmed its prior decision, doing so because Freeman's affidavit failed to contradict Pearson's specific sworn statements. An order and an amended order were entered granting the motion to renew the cross motions of Goldberg and Donaldson and precluding plaintiff from offering any proof at trial relating to the cause and extent of the tower's delamination (CPLR 3126 [2]). Plaintiff appeals from the earlier order. Although plaintiff's notice of appeal does not refer to the amended order, this technical defect does not inhibit our addressing the merits of this appeal in the interest of judicial economy (see, CPLR 5520 [c]; *Matter of Wayne M. v Francis N.,* 154 AD2d 837, 839).

■ Supreme Court properly granted Polyshell's and Donaldson's motion to renew Goldberg's and Donaldson's earlier cross motions to preclude. New facts and a justifiable excuse for the delay in placing such facts before the court have been shown (CPLR 2221; *Zebrowski v Pearl Kitchens,* 172 AD2d 972, 973). Pearson's unanticipated statements in his examination before trial, conducted on July 21, 1991, and in his subsequent affidavit only came to light after the original cross motions for preclusion were denied. That Pearson's deposition and affidavit were expected to relate solely to the nature of the repairs and not to yield evidence essential to the motions to preclude provides a reasonable excuse for the parties' failure to procure his testimony before making their original cross motions to preclude (cf., *Matter of Barnes v State of New York,* 159 AD2d 753, 754, *lv dismissed* 76 NY2d 935).

■ Nor can it be said—given the record evidence that, after examination of the tower was sought and before it was obtained, plaintiff willfully allowed the stucco to be entirely removed, effectively destroying the evidence central to defendants' defenses—that Supreme Court improvidently exercised its discretion in ordering preclusion of plaintiff's expert testimony (see, CPLR 3126 [2]; *Strelov v Hertz Corp.,* 171 AD2d 420,

421; *Acolyte Elec. Corp. v City of New York,* 165 AD2d 802, 803; *Sawh v Bridges,* 120 AD2d 74, 78-79, *appeal dismissed* 69 NY2d 852; *Ferraro v Koncal Assocs.,* 97 AD2d 429; Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3126:7, at 757-758).

Plaintiff's assertion that it was defendants' conduct that resulted in their failure to inspect the tower before it was totally delaminated is belied by the record evidence of defendants' repeated requests of plaintiff to gain access to the tower. Furthermore, plaintiff has provided no reasonable explanation for its denial of those requests once the releases were furnished. That the postponement of the scheduled visits purportedly due to the fact that "the scaffolding will not be in place" on the date scheduled was willful and contumacious is borne out by Pearson's sworn statements that he was advised by plaintiff's construction manager that "it would [not] serve [Pearson's] benefit to have [defendants] go up on the scaffold." Freeman's blanket denial that he made such a statement, in view of his inability to remember the specifics of any conversation with Pearson, fails to convince us otherwise. Being the party controlling the removal of the stucco, plaintiff could have prevented its complete removal before the parties had the opportunity to inspect it, but knowingly failed to do so.

In light of the facts that stucco lamination involves multiple steps, each involving different parties to this action, that, as indicated by plaintiff's expert report prepared by Feld, Kaminetzky & Cohen, P. C., several different causes of the delamination are possible, that the various counterclaims and cross claims raised by defendants require expert proof, and that defendants will be prejudiced by not having their own experts test the tower's exterior, the sanction of preclusion of plaintiff's expert testimony is reasonably necessary to protect defendants' legitimate interests *(see, Oak Beach Inn Corp. v Babylon Beacon,* 62 NY2d 158, 167, *cert denied* 469 US 1158; *see also, Miller v County of Orange,* 120 AD2d 713, 714; *Hyosung [Am.] v Woodcrest Fabrics,* 106 AD2d 298, 299, *appeal dismissed* 64 NY2d 934; *cf., Forman v Jamesway Corp.,* 175 AD2d 514, 515-516).

MIKOLL, J. P., MERCURE, CREW III and HARVEY, JJ., concur.

Ordered that the order and amended order are modified, on the facts, without costs, by providing that plaintiff is pre-

cluded from offering at trial (1) any evidence from plaintiff's expert, Feld, Kaminetzky & Cohen, P. C. and (2) any evidence based upon said expert's reports, notes, memoranda and test results on the issue of the cause and extent of the delamination, and, as so modified, affirmed.