■ ARTS4ALL, LTD., et al., Respondents-Appellants, v JUDITH L. HANCOCK, Appellant-Respondent, and Counterclaim Plaintiff-Appellant-Respondent. DANIEL Y.C. NG et al., Additional Counterclaim Defendants, and PETER OSGOOD, Additional Counterclaim Defendant-Respondent-Appellant. [863 NYS2d 193]—

Order, Supreme Court, New York County (Rolando T. Acosta, J.), entered July 25, 2006, which dismissed plaintiffs' remaining cause of action and defendant's counterclaims for failure to comply with discovery and effectively denied defendant's request for signed transcripts, affirmed, without costs. Appeal from the October 31, 2005 ruling imposing sanctions against defendant dismissed, without costs.

Supreme Court providently exercised its discretion to strike the pleadings (CPLR 3126 [3]). The parties have offered no excuse for their repeated noncompliance with the court's disclosure orders, and their conduct throughout the course of this litigation has been "dilatory, evasive, obstructive and ultimately contumacious" (*Henry Rosenfeld, Inc. v Bower & Gardner*, 161 AD2d 374, 374 [1990]). It is a "court's prerogative to control its calendar and expeditiously dispose of the volume of cases before it" (*People v Alston*, 191 AD2d 176, 177 [1993]; *see also Kriger v Holland Furnace Co.*, 12 AD2d 44, 46 [1960]). Appellate courts have recognized that, under the individual assignment system, substantial deference should be accorded to the trial court's considerable discretion to compel compliance with discovery orders, and, absent clear abuse, a penalty imposed in accordance with CPLR 3126 should not readily be disturbed (*see Sawh v Bridges*, 120 AD2d 74, 79 [1986], *appeal dismissed* 69 NY2d 852 [1987]). The public policy favoring reso-

lution of cases on their merits is not promoted by permitting a party to a single such matter to impose an undue burden on judicial resources to the detriment of all other litigants. Nor is the efficient disposition of the business before the courts advanced by undermining the authority of the trial court to supervise the parties who appear before it (*cf. id.* at 80).

The record, which reflects a personal animus between defendant and plaintiff Humphrey, amply demonstrates the parties' willful, contumacious defiance of court orders via excessive, frivolous and retaliatory motion practice involving disclosure and other issues. In this simple action for breach of the no-disparagement clause of a general release, the parties, in a relatively short period of time, interposed approximately 18 motions, several of which involved voluminous disclosure demands and charges of misconduct, improper disclosure requests and noncompliance with such demands. The court's September 29, 2005 order vacating all disclosure stays, admonishing both sides for their dilatory tactics and directing the parties to complete disclosure within 30 days, effectively afforded them the opportunity to begin anew. The parties' conduct, nevertheless, quickly segued into abuse despite the court's proactive efforts to provide a firm discovery schedule, a restriction on motion practice, rapid access to court assistance in resolving disputes, and progressive warnings and sanctions.

For example, over one year after it had been issued, plaintiffs still had not complied with the court's June 8, 2005 order enforcing defendant's shareholder inspection rights to certain videotapes, financial statements and other corporate documents (including items sought in defendant's Schedule J), notwithstanding the court's repeated reiteration of this directive. Thus, plaintiffs also engaged in willful misrepresentation and dilatory conduct when they filed a note of issue on January 13, 2006 stating that all disclosure had been completed. Several months later, on April 6, 2006, the court ordered the parties to its jury room and several hours were spent working out an agreement as to the Schedule J items, with some degree of success. But upon their return to court that same day, plaintiffs sought to renege on the agreement, informing the court that they would be filing a CPLR 3126 motion to strike defendant's amended counterclaims.

Defendant's response to the September 29, 2005 discovery order was to wait until nearly the mandated initial disclosure completion date, November 18, 2005, before serving her discovery responses together with voluminous discovery requests, thus rendering compliance with the court's order

virtually impossible. Defendant filed a 45-page initial discovery response on October 19, 2005, a notice to admit facts on October 14, 2005, a notice to admit genuineness of documents (with 28 documents attached) on October 17, 2005, another notice to admit genuineness of documents (with 12 documents attached) on October 18, 2005, and her own notice of deposition on October 24, 2005.

Defendant failed to appear at the deposition scheduled for October 24, 2005. The record shows that when counsel was served with notice of the deposition, he requested that it be rescheduled due to, among other things, his observance of a religious holiday. Despite the court's denial of an adjournment, defendant defaulted in appearance. At the October 31, 2005 hearing in connection with the default, defendant's counsel informed the court that he had made an error, believing that October 24 was a Jewish holiday and only later learning that the holiday fell on October 25 and 26. Counsel apologized for creating the impression that "we have also played fast and loose with the Court." The court fined defendant $500 for her failure to appear at the deposition, and issued a briefly extended but more rigid disclosure schedule and a warning to both parties that further failure to adhere to the disclosure schedule would result in dismissal of the offending party's pleadings.

It is significant that both sides made motions pursuant to CPLR 3126 to strike each other's pleadings despite their own willful and contumacious disregard for the court's discovery orders—plaintiff did so on three separate occasions. Furthermore, the record indicates that the conduct at issue cannot be blamed solely on the parties' attorneys. As the court noted in the decision on appeal: "It is only upon listening to and observing the parties during oral argument and their utter lack of respect for each other that this Court came to its conclusion that the parties have no interest in resolving this dispute nor [to] allow the Court or a jury to do so, but instead are intent on using the court as a weapon to harass each other."

The motion court's finding that the parties' conduct was willful and contumacious is supported by the record, and "[i]t would not be appropriate, at bar, for this Court to substitute its discretion for that of the Justice sitting in the IAS Court" (*Spira v Antoine*, 191 AD2d 219, 219-220 [1993], citing *Sawh v Bridges*, 120 AD2d at 77). In view of the obstreperous, dilatory and evasive conduct engaged in by the parties, the motion court did not abuse its discretion in dismissing the complaint and the counterclaims. As stated by the Court of Appeals: "If the credibility of court orders and the integrity of our judicial system

are to be maintained, a litigant cannot ignore court orders with impunity. Indeed, the Legislature, recognizing the need for courts to be able to command compliance with their disclosure directives, has specifically provided that a 'court may make such orders . . . as are just,' including dismissal of an action (CPLR 3126) . . . [C]ompliance with a disclosure order requires both a timely response and one that evinces a good-faith effort to address the requests meaningfully" (*Kihl v Pfeffer*, 94 NY2d 118, 123 [1999]).

Finally, the contention that the dismissals caught the parties unawares is without merit. Indeed, the record shows that from September 29, 2005 forward the court repeatedly warned the parties of the risk of having their pleadings dismissed for disclosure abuse. While it is true that, during the proceedings on April 6 and May 11, 2006, the court stated that it was not likely to dismiss pleadings, on the former date it granted plaintiffs permission to submit a CPLR 3126 motion and adjourned defendant's CPLR 3126 motion so as to make both returnable on May 11, 2006 for argument. At that time, the parties' final court appearance before the decision on appeal was entered, they vigorously argued for dismissal of each other's pleadings. The court noted with disgust that defendant's submission on its motion, contrary to the court's instructions, had been unnecessarily voluminous. The court also admonished plaintiff: "you know, you are not giving me any choices. I am going to have to dismiss your cause of action as a sanction for failure to abide by several court orders that this Court has issued. I mean, what else, what other choice do I have other than continuing with this game that you folks are playing?"

This heated proceeding ended with the court tersely withdrawing its order, issued earlier in the proceeding, directing that certain long-delayed disclosure be provided to defendants and stating that it would issue its decision within 60 days. Taken in context, these events clearly apprised the parties that the court, despite its expressed unwillingness to dismiss the pleadings, was considering such action based upon their conduct during disclosure. Thus, the parties were on notice that CPLR 3126 dismissal was a real option, the court's comments to the contrary notwithstanding.

Given the court's dismissal of the remainder of the parties' claims, it was not error to simultaneously decline to rule upon, and thus implicitly deny, defendant's request for signed transcripts of three oral, disclosure-related rulings rendered academic by the dismissals. One such ruling was the court's sua sponte imposition during oral argument on October 31, 2005 of

a $500 sanction against defendant. Apart from being unappealable here because the transcript was not "so ordered" by the court (*see Matter of Grisi v Shainswit*, 119 AD2d 418, 420 [1986]), defendant's challenges lack merit. She erroneously asserts that the sanction, for noncompliance with a CPLR 3107 deposition notice, was improperly imposed since the notice was void on its face. CPLR 3107 provides, inter alia, that 20 days' notice shall be given for a deposition upon oral examination, "unless the court orders otherwise." Here, although only 13 days' notice was given, the record shows that the court considered and rejected defendant's request to revise the disclosure schedule prior to the deposition. Defendant also wrongly asserts that the court erred in imposing the sanction orally, in violation of 22 NYCRR 130-1.2. The record shows that the sanction was imposed pursuant to CPLR 3126, which is distinct from, and not subject to the constraints of, a sanction imposed under the Court's rules (Connors, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C3126:11; *see also Hilley v Sanabria*, 12 AD3d 1188, 1189 [2004]).

We have considered and rejected the parties' remaining arguments for affirmative relief. Concur—Tom, J.P., Williams and Moskowitz, JJ.

Nardelli and McGuire, JJ., dissent in a memorandum by McGuire, J., as follows: In my view, Supreme Court erred in dismissing pursuant to CPLR 3126 plaintiffs' remaining cause of action and all of defendant's counterclaims since the drastic sanction of dismissal was not warranted. Accordingly, I would modify the July 25, 2006 order to impose against both sides the lesser sanction of terminating their respective rights to any further disclosure, reinstate the dismissed claims and remand the matter for a trial on the merits.

As we have recognized, "[b]ecause of the strong public policy in this State against limiting audience before the court, and in favor of resolving disputes on the merits, courts have reserved dismissal [under CPLR 3126] for rare cases where the extreme nature of the abuse warrants depriving a party of the opportunity to litigate the claim" (*Corsini v U-Haul Intl.*, 212 AD2d 288, 291 [1995] [citation omitted], *lv dismissed in part and denied in part* 87 NY2d 964 [1996]), i.e., when the failure to disclose was willful, contumacious or due to bad faith (*e.g. Cespedes v Mike & Jac Trucking Corp.*, 305 AD2d 222, 222 [2003]). Moreover, in reviewing disclosure sanctions we are guided by the principle that any such sanction should be commensurate with the nature and extent of the disobedience the sanction was designed to punish (*Weissman v 20 E. 9th St. Corp.*,

48 AD3d 242, 243 [2008]; *Christian v City of New York*, 269 AD2d 135, 137 [2000]; Connors, Practice Commentaries, Mc-Kinney's Cons Laws of NY, Book 7B, CPLR C3126:8, at 462 [2005]).

By an order entered July 25, 2006, Supreme Court dismissed plaintiffs' remaining cause of action and defendant's counterclaims pursuant to CPLR 3126. While the record reflects the court's understandable frustration with the parties' extensive motion practice, until September 29, 2005, just 30 months after the filing of the first amended complaint in May 2003, there had been no suggestion from the court that the parties were risking a possible dismissal of their pleadings on account of their conduct. Indeed, the part of the court to which the case was originally assigned had dismissed the complaint under CPLR 3211 in an order entered September 25, 2003, and this court reinstated some of the causes of action in an order entered March 2, 2004 (5 AD3d 106 [2004]). Furthermore, when defendant moved for summary judgment on July 28, 2005, a stay of disclosure went into effect pursuant to CPLR 3214 (b). Thus, the window for disclosure had been effectively limited to the 17-month period between March 2, 2004 and July 28, 2005. In actuality, this period was even shorter since disclosure demands realistically could not have been served immediately upon the issuance of this Court's March 2, 2004 order reinstating some of the causes of action.

On September 29, 2005, Supreme Court, among other things, vacated the CPLR 3214 (b) stay of disclosure, directed completion of all depositions within 30 days and ordered plaintiffs to file a note of issue by November 18, 2005. Only at that point did the court advise that it had "reached [its] limit" with the parties' motion practice, most of which, until that time, had involved motions to dismiss the various pleadings and for summary judgment and motions regarding plaintiffs' answer to defendant's counterclaims. This was the first time the parties were actually placed on notice of any kind of disclosure deadline.

Plaintiffs did not serve their notice for defendant's deposition until October 11, 2005, and then demanded that defendant appear on October 24, 2005, a notice period less than the 20 days provided by CPLR 3107. By letter dated October 17, 2005, defendant's counsel asked the court, among other things, to extend the disclosure deadline, and advised that he would not be available on October 24 because it was a religious holiday. The court notified defendant's counsel by letter that his request was denied, but the letter did not arrive at counsel's office until October 24. In the letter, however, the court advised that it was

amenable to rescheduling the deposition if the attorneys could agree to do so. Thus, defendant's counsel called plaintiffs' counsel four times on October 24 in an effort to reschedule the deposition; none of defendant's counsel's calls were taken by plaintiffs' counsel and the calls were not returned. Defendant's counsel had also sent a letter on October 21 to plaintiffs' counsel requesting that the deposition be rescheduled from October 24 to October 27; plaintiffs' counsel did not respond to that letter, but advised the court that defendant had not appeared for the deposition. Notably, the requested reschedule date was within the 30-day time limit set by the court for completing depositions.

On October 31, the attorneys appeared before the court. Defendant's counsel advised the court that he had been mistaken in his belief that October 24 was a religious holiday. Defendant's counsel stated: "I had notified the Court I was unavailable that day. As I subsequently told [the justice's law clerk] I had made an error. I'm deeply embarrassed by it because I looked at my calendar and was confused as to which days the Jewish holidays were and thought I was unavailable on the 24 when in fact I was unavailable on the 25 and 26 . . . I communicated this to [the justice's law clerk] as soon as I realized I made an error. I tried to tell [plaintiffs' counsel]." During that appearance, the court fined defendant $500 for failing to appear for the deposition.

A matter of critical importance to the resolution of this appeal is that defendant's counsel's failure to appear with his client for the October 24 deposition was *not* by any means an instance of willful, contumacious or bad faith conduct. Notably, Supreme Court made no such finding in the course of imposing the $500 fine. Nor did Supreme Court find that defendant's counsel was not credible either when he expressed his embarrassment at his mistake or when he went on to represent to the court that he had notified the court's law clerk and had tried to contact plaintiffs' counsel. Indeed, plaintiffs' counsel has never disputed defendant's counsel's representations that he called plaintiffs' counsel four times on October 24 after having sent a letter to plaintiffs' counsel on October 21.

Not surprisingly, the majority does not purport to make its own finding of willful, contumacious or bad faith conduct in this regard. Even if there were some basis for making this finding, and there is not, defendant's failure to attend the deposition on October 24 would not warrant the striking of her counterclaims (*see Rodriguez v Sklar*, 56 AD2d 537, 538 [1977] [where there is some doubt whether a party's failure to appear for a deposition

was willful the party should be permitted one last chance to appear to be deposed before the drastic sanction of striking the party's pleading is imposed]). Moreover, as the court recognized in its July 11, 2006 order, defendant did appear for a deposition at a later date. Thus, she was fined $500 for not having appeared initially, but her counterclaims nonetheless were dismissed even though she was eventually deposed (see Cambry v Lincoln Gardens, 50 AD3d 1081, 1082 [2008] ["Belated but substantial compliance with a discovery order undermines the position that the delay was a product of willful or contumacious conduct"]).

Contrary to the majority's conclusion, Supreme Court's finding that defendant engaged in willful and contumacious conduct warranting the dismissal of her counterclaims pursuant to CPLR 3126 is not supported by this record. Other than failing to appear for the October 24 deposition, the only other conduct by defendant specified by the majority was her serving disclosure requests several weeks before the initial November 18 target date for the close of disclosure. These requests were made in mid-October, only three weeks after the court issued the September 29 disclosure order, hardly an inordinate period of time, and nearly a month before the November 18 date specified in that order for the close of disclosure. Nothing in the September 29 order, moreover, required defendant to serve all her disclosure requests within one or two rather than three weeks of its issuance. Furthermore, in addition to trying to complete disclosure by the court's deadline, defendant's counsel was preparing defendant's brief and supplemental record for appeals and cross appeals from several of the court's orders in this action (25 AD3d 453 [2006], lv dismissed 6 NY3d 891 [2006]). Indeed, apparently recognizing the impracticality of its deadline, the court repeatedly extended the time for completing disclosure and filing a note of issue. The court ultimately set January 13, 2006 as the deadline for filing the note of issue; defendant filed the note of issue on that date but only did so because the court had so ordered. Nonetheless, disclosure continued through the spring of 2006.

Nor should plaintiffs' remaining cause of action have been dismissed. On April 6, 2006, as the majority notes, the parties gathered in the jury room for a lengthy period of time to discuss unresolved disclosure issues. When the parties returned to the courtroom, they advised that certain issues were still in dispute, although many had been resolved. After additional colloquy, the court determined that the remaining issues should be the subject of motions and the court set a briefing schedule.

Plaintiffs did not, as the majority contends, "[seek] to renege" on matters on which the parties had already agreed. Rather, as the court itself stated, the jury room understandings "would still be an agreement." Thus, even at that late date, seven months after the court had advised the parties that it was reaching the limits of its patience, it gave no hint to the parties that the submission of further motions would place their pleadings in jeopardy. To the contrary, it conveyed the impression that the motions would clear the last obstacles to the close of disclosure.

The parties' conduct was simply not egregious enough to warrant the ultimate sanction of dismissal of all pleadings, which, as noted, "is appropriate only where the moving party demonstrates that the nondisclosure was willful, contumacious or due to bad faith" (*Weissman*, 48 AD3d at 243; *see Christian*, 269 AD2d at 137; *Palmenta v Columbia Univ.*, 266 AD2d 90, 91 [1999]). Again, the bulk of the disclosure in the case was completed, albeit belatedly, which further undermines the notion that the parties' conduct was willful or contumacious (*see Myung Sum Suh v Jung Ja Kim*, 51 AD3d 883 [2008]; *Cambry, supra*; *Pascarelli v City of New York*, 16 AD3d 472 [2005]; *see also Carlos v 395 E. 151st St., LLC*, 41 AD3d 193 [2007]). Under the circumstances, the termination of disclosure and a trial on the merits would be a remedy commensurate with the parties' conduct (*see generally* CPLR 3126; *Torian v Lewis*, 90 AD2d 600, 601-602 [1982] ["The court has broad discretion . . . in fashioning just remedies concerning failure to comply with a discovery order"]).*

The majority, however, apparently believes that the penalty of terminating disclosure and ordering the parties to trial is not more commensurate with the parties' conduct than the penalty of dismissal it affirms, despite the fact that a substantial amount of disclosure has been completed. By affirming the dismissal of plaintiffs' remaining cause of action and defendant's counterclaims at this stage of the litigation, the majority declares a judicial plague on the houses of both of these contentious Montagues and Capulets. The majority not only denies all parties a trial on the merits of their disputes, its decision results in a waste of the time, energy and resources of the parties and their attorneys, as well as a waste of the substantial judicial resources that have been devoted to this case.

---

* Another appropriate remedy would be to refer the matter to a referee for an abbreviated but comprehensively supervised disclosure process, with an understanding that the imposition of appropriate sanctions hung over the parties' heads (*see Lowitt v Burton I. Korelitz, M.D., P.C.*, 152 AD2d 506, 508 [1989]).

Contrary to the majority's suggestion, modifying Supreme Court's order to terminate disclosure and reinstate the remaining cause of action and the counterclaims, and remanding the matter for a trial, will not "undermin[e] the authority of the trial court to supervise the parties who appear before it." Rather, so modifying the order represents nothing more than a recognition that a trial judge may impose a penalty under CPLR 3126 that is not commensurate with the nature and extent of the disobedience the sanction was designed to punish, and we may modify such a penalty when we conclude that the trial court improvidently exercised its discretion. As Justice Bracken (joined by Justice Lazer) stated in rejecting the notion that the Appellate Division should only disturb a disclosure sanction imposed by Supreme Court where the court abused its discretion: "I must . . . register my disagreement with my colleagues' conclusion that affirmance of the order dismissing the complaint is necessary in order to effectuate the expedient and efficient disposition of cases under the Individual Assignment System . . . . Although the statute (CPLR 3126) provides the trial court with broad discretion in fashioning penalties for failure to comply with discovery notices and orders, th[e] [Second Department] has not hesitated to act where, in our view, the imposition of a particular sanction by the trial court constituted an improvident exercise of its discretion. I am unable to find any evidence that the IAS was intended to abrogate or limit the power heretofore exercised by an intermediate appellate court to review discretionary rulings and, in appropriate cases to substitute its own discretion for that of a trial court" (*Sawh v Bridges*, 120 AD2d 74, 82 [1986, Bracken, J., dissenting]). Of course, our precedents comport with Justice Bracken's view. Thus, while the nature and degree of a penalty pursuant to CPLR 3126 is a matter committed to the discretion of Supreme Court and we give deference to the determinations of Supreme Court in that regard (*Palmenta*, 266 AD2d at 91), we may disturb disclosure penalties imposed by Supreme Court in the absence of an abuse of discretion (*Monica W. v Milevoi*, 252 AD2d 260, 264 [1999]). Regardless of whether Supreme Court did abuse its discretion, we should disturb the penalty the court imposed because it is not commensurate with the conduct the penalty was meant to punish (*see e.g. Weissman, supra; Colucci v Jennifer Convertibles*, 283 AD2d 224, 225 [2001]; *Christian*, 269 AD2d at 137; *see also Quinn v City Univ. of N.Y.*, 43 AD3d 679 [2007]).

Finally, there does not appear to have been any justification for the court's refusal to sign the transcript of the proceedings in which it imposed a sanction of $500 due to defendant's fail-

ure to appear at the deposition. Even if the counterclaims had otherwise been properly dismissed, defendant was entitled to appellate review of the order imposing this sanction.