[837 NYS2d 33]

CDR Créances S.A., as Successor to Société de Banque Occi-
dentale, Respondent, v Euro-American Lodging Corpora-
tion et al., Appellants, et al., Defendants.

First Department, May 22, 2007

### APPEARANCES OF COUNSEL

*Pavia & Harcourt LLP*, New York City (*Steven Skulnik* of counsel), and *Bryan Cave LLP*, New York City (*Suzanne M. Berger* and *Robert A. Wolf* of counsel), for Euro-American Lodging Corporation, appellant.

*Montclare & Wachtler*, New York City (*Paul D. Montclare* of counsel), for Macson appellants.

*Herrick Feinstein LLP*, New York City (*Scott T. Tross* of counsel), for Atlantic Bank of New York, appellant.

*Kellner Herlihy Getty & Friedman, LLP*, New York City (*Douglas A. Kellner, Arthur W. Greig* and *Bruce J. Bergman* of counsel), for CDR Créances S.A., respondent.

### OPINION OF THE COURT

CATTERSON, J.

In this appeal from an order and judgment of foreclosure on a hotel building located in midtown Manhattan, defendants-appellants Euro-American Lodging Corporation et al. (hereinafter referred to as EALC) assert that the motion for summary judgment of plaintiff CDR Créances S.A. (hereinafter referred to as CDR) should have been denied since a triable issue of fact exists as to the date when the cause of action accrued. For the reasons outlined below, this Court agrees. The order and judgment should be modified and the matter remanded for discovery to ascertain whether, in 1996, there was a renewal of the $82 million loan agreement between EALC and the plaintiff.

The answer to this seemingly simple question has been mired in 16 years of rancor and disagreement now spread before this

Court in three different appeals which, for all their apparent multi-million dollar complexity, present issues no different than a garden-variety, single-residence foreclosure. The property at the center of the instant action is located at West 52nd Street. The conversion of this property into a Flatotel hotel is the business venture that brought together Société de Banque Occidentale (hereinafter referred to as SDBO), a wholly owned subsidiary of the French bank Crédit Lyonnais and predecessor-in-interest of CDR, and EALC, a United States corporation.

Initially, when EALC was incorporated in 1990, SDBO was one of its two shareholders, the other being SNC Coenson International et Cie (hereinafter referred to as SNC). As partners, SDBO and SNC had developed other Flatotel hotels in Paris with some success. As in those ventures, so in this one SDBO was to provide the financing of $56.4 million while SNC would provide the hotel industry expertise. The principal was to be repaid within several years based on the anticipated sale of the property which was purchased at a "distressed" price.

Subsequently, SDBO learned that foreign banks in the United States could not be shareholders in nonbanking businesses. So, while SNC nominally purchased SDBO's share in EALC for $50,000 (which, in fact, was never paid), a new loan agreement was drawn up in May 1991 with SDBO now providing financing of $82,704,990. The loan would mature in five years but could be renewed for a further five-year period if the lender found no violations of the agreement. Further, the loan funds were to be disbursed in stages conforming to a construction budget and plans and could be withheld in the event of failure to conform with the agreement.

Seventy-five million dollars of the loan was secured by mortgages (converted into two separate liens), a guaranty by two Coenson entities, the assignment of rents and leases, a security agreement and a pledge of 500 EALC shares each by Flatotel and Coenson. EALC was required to pay the taxes on the building. The loan agreement was governed by French law.

Very soon thereafter, in 1992, the relationship soured. Alleging that EALC was diverting funds to a software company housed in the new property, SDBO refused to disburse any more funds thereby allegedly delaying construction. In August 1992, EALC initiated an action to compel SDBO to perform under the agreement. The action was brought in the Court of Commerce in Paris. SDBO counterclaimed that EALC had defaulted, and sought to accelerate the loan.

In June 1993, the trial-level Paris Commercial Court ruled that the loan agreement was valid, dismissed SDBO's counterclaim and denied SDBO the right to terminate the agreement. It also directed disbursement of the balance of the loan funds of $8,390,091 to EALC along with payment of delay damages to EALC in the amount of $2 million. SDBO refused to honor the award. EALC proceeded to enforce the judgment and French authorities seized the funds due EALC in September 1993. SDBO appealed.

On July 3, 1996, the Paris Court of Appeal, in an interlocutory decision, affirmed the lower court in large part but ordered that the $2 million damages be reassessed by an expert. SDBO appealed to France's Supreme Court. In March 2000, the French Supreme Court rejected SDBO's petition, and the allegation that EALC had defaulted because of the amounts paid to the software company. In 2001, at both parties' request, the matter was temporarily suspended by the Paris Court of Appeal, but then was restored to the calendar in January 2002 with both parties raising new issues.

In February 2003, the Paris Court of Appeal ordered that CDR Créances (now successor-in-interest to SDBO) pay EALC $790,779 with interest in damages caused by interruption of construction. It also ordered EALC to repay the loan, which it declared matured as of May 2001, in the amount of $82,704,990 with interest as of the date of the loan, as well as $13,923,311 with interest in reimbursement for taxes paid to New York City. On May 23, 2003, EALC petitioned France's high court to review the judgment.

In the meantime, by summons and complaint dated May 8, 2003, CDR commenced an action in New York to foreclose the mortgages based on EALC's default on the same loan agreement at issue in the French action. Further, upon CDR's request, the New York court appointed a temporary receiver. EALC asserted in its answer, that, inter alia, the foreclosure action was barred under the provision for an election of remedies pursuant to RPAPL 1301.

RPAPL 1301 provides:

> "1. Where final judgment for the plaintiff has been rendered in an action to recover any part of the mortgage debt, an action shall not be commenced or maintained to foreclose the mortgage, unless an execution against the property of the defendant has

been issued upon the judgment to the sheriff . . . and has been returned wholly or partly unsatisfied."

In addition, Atlantic Bank, the holder of another ($23 million) mortgage on the West 52nd Street property, intervened in the foreclosure action, and moved to dismiss under RPAPL 1301 on the grounds of the pendency of the French lawsuit. By order dated February 16, 2005, the first foreclosure action was dismissed.

In September 2003, while the first foreclosure action was pending, CDR commenced an action, by motion for summary judgment in lieu of complaint to recognize the French judgment (CPLR 5303) and to attach EALC's New York assets. The court held that an action to recognize a foreign judgment under CPLR 5303 during the pendency of a mortgage foreclosure action does not violate RPAPL 1301, reasoning that the CPLR 5303 action is not "to recover any part of the mortgage debt" but is founded on a judgment. Therefore, the court observed, the judgment creditor does not seek any new relief, but merely asks the court to ministerially recognize a foreign judgment and convert it to a New York judgment. By order entered March 22, 2005 (about a month after dismissal of the first foreclosure action), Supreme Court granted CDR's motion for summary judgment to recognize the French judgment and denied the cross motion to dismiss.[1]

Given the CPLR's restriction on money judgments based on instruments secured by mortgage (*see* CPLR 5236 [b]), and the fact that the property on West 52nd Street is EALC's sole asset,

---

1. On April 19, 2005, judgment was entered based on the order for the principal sums of $82,704,990 for the loan debt and $13,923,311 for the real estate taxes, less an offset in favor of EALC of $790,779, for a total of $95,837,522. The computation of interest was referred to a Special Referee to hear and report. The parties stipulated to the calculations: if the Referee found a 5% interest surcharge, as imposed by French law, applied then the total interest would be $107,316,610.14; if not, it would be $91,832,220.40. By order and judgment entered October 19, 2005, Justice James confirmed the Referee's report without comment, adding interest that had accrued after April 19, 2005, for a total judgment of $112,159,088.41. About one week later, on October 28, 2005, EALC's French application was granted to the extent of directing CDR to repay EALC the duplicative $12 million, and denied as to the interest surcharge.

Both orders and judgments of the motion court were appealed and were heard on the same calendar as this appeal, and are unanimously affirmed. (*See* 40 AD3d 421 [2007] [decided herewith].)

it is not surprising that the sheriff's execution was returned marked "unsatisfied."[2]

Eleven days later, on May 26, 2005, CDR commenced this second foreclosure action pursuant to RPAPL 1301, which permits an action for foreclosure once a money judgment is returned unsatisfied. EALC and defendants-appellants Macson and Atlantic Bank asserted, inter alia, the affirmative defenses of the six-year statute of limitations, laches and equitable estoppel. CDR moved for summary judgment in mid-July 2005 before any discovery.

On October 11, 2005, the motion court ruled that CDR was entitled to foreclosure on the hotel building. The motion court held that the French courts had "sole and exclusive" jurisdiction to determine any occurrence of an "Event of Default." Further, the court held:

> "It is beyond peradventure that such an Event of Default was determined by Paris Court of Appeal in its February 12, 2003 Judgment, which found that the Loan became due on May 10, 2001, and ordered that EALC pay CDR the full amount of principal and additional advances for real property taxes . . . . Thus, the debt was accelerated as of May 10, 2001, which triggered the accrual of plaintiff's claim under the Mortgage, which was timely interposed under the six years limitation period."

Setting aside the fact that it is semantically incoherent to state that a debt is accelerated as of the date of its maturity, the motion court erred in granting CDR's motion for summary judgment because it ignored the issue of fact arising as to whether the loan was, in fact, renewed in 1996. Instead, the motion court incorrectly construed the French court's ruling as an unequivocal determination that the loan *became* due as of May 10, 2001 and so erroneously applied collateral and judicial estoppel principles to the determination. Second, it compounded its error by holding that plaintiff's foreclosure cause of action accrued on

---

**2.** It remains a mystery as to why CDR continued to pursue a money judgment action in New York notwithstanding this passage from CDR's brief (at 9):

> "When CDR commenced an action in . . . New York to foreclose the mortgages, EALC served answers that alleged that CDR was first required to obtain recognition of the French judgment in New York before it could commence a foreclosure action. Therefore, CDR also commenced a second action seeking to have the French judgment recognized."

May 10, 2001 and, accordingly, that the action was timely interposed.

There is no dispute that the statute of limitations period applicable to an action on a bond or note, the payment of which is secured by mortgage upon real property, is six years. (CPLR 213 [4].) Further, it is well established that the six-year period begins to run when the lender first has the right to foreclose on the mortgage, that is, the day after the maturity date of the underlying debt "unless the mortgage debt is accelerated" in which case "the entire amount is due and the Statute of Limitations begins to run on the entire mortgage debt." (*Loiacono v Goldberg*, 240 AD2d 476, 477 [1997], citing *Federal Natl. Mtge. Assn. v Mebane*, 208 AD2d 892, 894 [1994].)

Thus, the determination of whether the loan was renewed in May 1996 is crucial to a finding that this foreclosure action is timely, and such determination cannot be made as a matter of law. EALC argues that there is no support in the record that SDBO renewed the five-year loan period, and so the date on which the cause of action first accrued was either the date of acceleration of debt by SDBO in 1993, or at the latest May 10, 1996, when the initial five-year loan period expired and the loan matured. EALC further contends that, the determinations of the Paris courts in 1993 and 1996 notwithstanding, CDR could not have renewed the loan in May 1996 given the provisions of the loan agreement. Consequently, EALC maintains that, at latest, the statute of limitations expired on May 10, 2002, and that therefore this foreclosure action commenced in May 2005 is time-barred.

CDR argues, on the other hand, that the motion court was right; that EALC is barred by judicial estoppel from contesting the date of May 10, 2001 because the Paris Court of Appeal determined it to be the date of loan maturity; further, CDR argues that since the French courts did not make a determination of EALC's default until February 2003, CDR was barred from accelerating the debt, which was thus automatically renewed for the additional five-year period until May 10, 2001.

We find persuasive EALC's assertion that when, in February 2003, the Paris Court of Appeal stated that the "ultimate due date for all the loans is ten years from the date on which the agreement was signed, May 10, 1991" it was stating that *under any possible reading or scenario*, that is, whether it was renewed or not renewed, the loan had matured since the last possible date for its maturity was the end of a possible second five-year

period on May 10, 2001. The Paris court was never asked to determine the date of accrual for the purposes of a foreclosure action brought in New York. It was merely urged by CDR to "sentence" EALC to repayment of the entire principal with interest and to the repayment of property taxes which CDR had paid on EALC's behalf to New York City.

Indeed, in the French to English translated version of the court's decision, it is difficult to ascertain what factor the court found determinative and for what reason. The court stated only that CDR was now asking it to rule that "EALC defaulted in the performance of its obligations . . . [under the May 10, 1991 agreement], especially in the payment of interest—taxes—assessments" and where CDR introduced a "new fact," that is, "the maturity of the term set forth by the loan agreement" and "whereas SDBO already sought repayment of this loan from the lower court, pleading an acceleration," and "[w]hereas according to articles 520 to 523 of the loan agreement, the ultimate due date for all the loans is 10 years from the date on which the agreement was signed, May 10, 1991 . . . [this] court . . . [s]entences EALC" to repay the loan of $82,704,990 with interest and together with $13 million-plus for taxes.

It may suit CDR at this juncture to claim that since there was no determination as to EALC's default until this February 2003 ruling, CDR's hands were tied on accelerating the debt. However, three factors militate against acceptance of such an assertion. First, as EALC argues, pending litigation and even rejection by the French courts of CDR/SDBO's petition to accelerate the debt within the first five-year period did not preclude CDR from exercising its option of nonrenewal for the second five-year period. Indeed, the alternative scenario entails acceptance of CDR's dubious argument that the term of the loan was automatically extended beyond its first maturity date without CDR's approval when, and indeed because, there was an allegation of default.

Second, by May 10, 1996, the default being litigated before the French courts was not the only default alleged against EALC. Neither side disputes the fact that EALC violated its obligation to pay municipal taxes, and that two days before the expiration of the first five-year period of the loan, on May 8, 1996, SDBO paid the $13 million property tax bill to the City of New York. EALC contends that therefore the renewal provision of the agreement precluded the extension of the loan agreement to a second five-year period. While CDR argues that the loan

was subject to automatic renewal, the wording of the renewal provision suggests otherwise since it reads: "These loans shall be renewed for a second period of five years on condition that during the first five-year period . . . the Bank has found no violation of the obligations provided for under this agreement."

Finally, the loan agreement between the parties gave SDBO/CDR the option of enforcing its remedies in our courts. A provision of the May 10, 1991 mortagage stated that the French courts would retain sole and exclusive jurisdiction over determinations such as occurrences of default "except that both the French courts and any New York State or United States Federal court sitting in New York City . . . shall have non-exclusive jurisdiction with respect to Lender's exercise of its enforcement remedies." Thus, it would appear that jurisdiction over a foreclosure action with respect to the subject mortgage lay here, and was not necessarily dependent on the outcome of any litigation regarding occurrences of default in the French courts.

In short, given the conduct of the plaintiff and its arguments on this appeal, it is impossible to determine whether it was aware of EALC's defaults prior to the expiration of the first five-year loan term. It is also impossible to make the crucial determination as to whether CDR, in fact, renewed the loan agreement, and thus whether the cause of action accrued in May 1996 or May 2001. These triable issues of fact preclude granting summary judgment. Moreover, there are facts in the exclusive possession of CDR such as bank communications at the time the loan was due for renewal, which EALC should be permitted to discover before any foreclosure action can be permitted to proceed.

Accordingly, the order and judgment of foreclosure (one paper) of the Supreme Court, New York County (Debra A. James, J.), entered December 1, 2005, bringing up for review an order, same court and Justice, entered on or about October 11, 2005, granting plaintiff's motion for summary judgment dismissing the affirmative defenses and counterclaims and denying defendants-appellants' cross motions for summary judgment dismissing the complaint and cross motion to compel discovery, should be modified, on the law, plaintiff's motion denied, the cross motion to compel discovery granted to the extent indicated herein, and otherwise affirmed, with separate bills of costs in favor of defendants-appellants, and the matter remanded for further proceedings consistent herewith.

WILLIAMS, J. (dissenting). In my view, the order and judgment of foreclosure, entered December 1, 2005, which, inter alia, granted plaintiff's motion for summary judgment dismissing the affirmative defenses and counterclaims of defendants Euro-American Lodging, Macson and Atlantic Bank in this action, and denied Atlantic Bank's motion to compel disclosure, should be affirmed.

The motion court correctly determined that the return of the sheriff's execution on the loan judgment justified plaintiff's resort to a foreclosure action, and that any bar under RPAPL 1301 no longer existed. The proceeding was timely, plaintiff's right to seek relief in court first accruing when the French court determined that the borrower was in default (*see City of New York v State of New York*, 40 NY2d 659, 668 [1976]). In view of the foregoing, we need not determine the disputed meaning of the date of maturity under the loan agreement set forth in the French judgment, or whether defendants' limitations arguments are precluded by factual determinations therein. However, we note that it is uncontroverted that throughout the proceedings in France, from 1992 to 2003, defendant Euro-American Lodging argued, with some success, the position that the loan agreement was valid, CDR's attempt to accelerate the loan agreement was invalid, the loan agreement had been renewed for five years from May 10, 1996, and, before the Paris Court of Appeal in May 2002, that the maturity date of the agreement should be further extended. Principles of judicial estoppel preclude Euro-American Lodging from arguing at this juncture a position that is diametrically opposed to that successfully asserted in earlier stages of this proceeding (*see Gale P. Elston, P.C. v Dubois*, 18 AD3d 301, 303 [2005]; *All Terrain Props. v Hoy*, 265 AD2d 87, 93 [2000]; *Ford Motor Credit Co. v Colonial Funding Corp.*, 215 AD2d 435, 436 [1995]).

This Court need not determine whether the interest of the Macson defendants under the Flatotel Franchise Agreement was as leaseholder or merely as licensee. Upon our own review of the record, we find the Macson defendants' claim that plaintiff's mortgage was subordinated to its interest is barred by the mortgages, and by the absence of either the required clause in the franchise agreement stating it is subordinate to the mortgage or by any other document signed by the lender agreeing to subordinate its interest to that of the Macsons. The defense of waiver was also barred by the terms of the mortgages (*see Excel Graphics Tech. v CFG/AGSCB 75 Ninth Ave.*, 1 AD3d 65 [2003], *lv dismissed* 2 NY3d 794 [2004]). Atlantic Bank's

counterclaim for equitable subrogation and priority of lien, based on its payment of tax liens, was properly dismissed in light of its knowledge of plaintiff's mortgages (*see Roth v Porush*, 281 AD2d 612, 614 [2001]) and its failure to inquire in the face of the borrower's assertion that the mortgage was unenforceable.

After due consideration, I also find appellants' other contentions meritless.

SAXE, J.P., and MALONE, J., concur with CATTERSON, J.; NARDELLI and WILLIAMS, JJ., dissent in a separate opinion by WILLIAMS, J.

Order and judgment of foreclosure (one paper), Supreme Court, New York County, entered December 1, 2005, bringing up for review an order, same court, entered on or about October 11, 2005, modified, on the law, plaintiff's motion for summary judgment denied, defendant's cross motion to compel discovery granted, and otherwise affirmed, with separate bills of costs in favor of defendants-appellants, and the matter remanded for further proceedings, as indicated.