OPINION OF THE COURT
Tom, J.
This matter arises out of the diversion of the proceeds of a *20 loan made by plaintiffs predecessor in interest to finance the renovation of a Manhattan property as a hotel. The conversion of the funds was accomplished by capital transfers to shell entities controlled by defendants Maurice Cohen and his son, Leon (collectively, the Cohens).[1] They were assisted in this enterprise by Sonia Cohen, wife of Maurice Cohen, and two family employees, Robert Maraboeuf and Allegria Achour Aich (collectively, appellants). We agree with Supreme Court’s overall conclusion that these defendants have exhibited no less dishonesty before the courts as in their dealings with business associates and the federal taxing authorities. Thus, in view of their well-documented acts of deceit and fraud committed to suborn the judicial process, this Court concludes that the sanction of striking their pleadings and entering judgment on default in the principal sum of $135,359,331.39 with prejudgment interest, was entirely appropriate.
Plaintiff is the successor in interest to Societe de Banque Occidentale (SDBO), a wholly owned subsidiary of French bank Crédit Lyonnais. SDBO and SNC Coenson International et Cie (SNC) formed a partnership to develop the Flatotel hotel in Paris, part of a worldwide franchise of hotels. In 1990, SDBO and SNC became shareholders of Euro-American Lodging Corporation (EALC), whose purpose was to convert a Manhattan building into a Flatotel hotel. SDBO was to provide financing and SNC to provide expertise in the hotel industry. SNC nominally purchased SDBO’s share in EALC for $50,000 because SDBO, as a foreign bank operating in the United States, could not own shares in a nonbanking business. SDBO’s financing, pursuant to a pledge agreement, was secured by a mortgage and security interest in all of EALC’s outstanding stock. In 1991, the parties entered into a new loan agreement, governed by French law, under which SDBO was to provide financing of $82,704,990 to the Manhattan Flatotel venture, to be disbursed as construction progressed, and EALC, among other things, was to pay taxes on the Manhattan property.
The relationship between the venture’s participants began to deteriorate in 1992, when SDBO accused EALC, controlled by Maurice Cohen, of diverting funds, and as a result refused to provide further financing for the construction. A decade of litigation before the French courts began with EALC’s filing an ac *21 tion to compel SDBO to distribute funds under the loan agreement and SDBO’s counterclaim seeking to accelerate payment of the loan debt on account of EALC’s default. In 2003, EALC was directed by the French court to repay the loan and $13,923,311 in taxes it was to have paid to the City of New York. The French judgment was recognized in this jurisdiction and, in 2005, plaintiff was granted judgment in the principal sum of $95,837,522 plus interest of $112,159,088.41, which this Court affirmed (CDR Créances S.A. v Euro-American Lodging Corp., 40 AD3d 421 [1st Dept 2007]). Plaintiff also instituted a mortgage foreclosure action predicated on EALC’s default on the same loan agreement (CDR Créances S.A. v Euro-American Lodging Corp., 43 AD3d 45 [1st Dept 2007]).
Also in 2003, plaintiff instituted a tort action asserting six causes of action and, in 2006, a second tort action asserting 38 causes of action — including fraud, fraudulent conveyance and conversion — against the Cohens, Sonia Cohen, various entities alleged to be controlled by them and certain of their employees. These actions were consolidated, and the first discovery conference was held in early March 2008. By way of an order entered August 13, 2008, Supreme Court struck the answers of the Cohen defendants and others for failure to comply with discovery demands, and judgment was entered against them later that month. This Court reversed the judgment, stating that due to the brief period that had elapsed from the initial discovery order and the granting of judgment by default, “reasonable latitude should have been afforded before imposing the ultimate sanction” (62 AD3d 576, 577 [1st Dept 2009]). Thereafter, defendants continued to resist discovery orders that this Court found to be generally within the exercise of Supreme Court’s discretion (77 AD3d 489, 491 [1st Dept 2010] [upholding all directives except production of Maurice Cohen’s personal tax returns]).
In April 2010, Maurice Cohen (also known as Mauricio Cohen Assor) and Leon Cohen (also known as Leon Cohen Levy) were arrested by federal authorities for conspiracy to defraud the United States government and subscription to false income tax returns. Joelle Habib and Patricia Habib Petetin Benharbon (Petetin), two sisters who had been in the employ of the Cohen family, entered into agreements with the Justice Department’s tax division to provide information, respond to questions and testify before the grand jury and at trial in exchange for the government’s promise not to prosecute them for activities in *22 connection with their involvement with Maurice and Leon Cohen. The criminal case was heard in the United States District Court for the Southern District of Florida, and the jury returned a guilty verdict in early October 2010. The testimony given by the Habib sisters at trial revealed a coordinated pattern of deceit calculated to conceal the defendants’ ownership of the New York property and the shell corporations to which the proceeds of its sale were transferred. It emerged that, in violation of the loan agreement with SDBO, the defendants had caused the New York property to be sold for some $33 million and, using entities they controlled (both Panamanian), converted the proceeds to their own use and avoided paying taxes on the income derived from the sale by transferring the money first to the Swiss bank account of Blue Ocean Finance and then to the account of Carribean Business Fund, maintained at the same bank.[2]
At sentencing, the District Court found that the Cohens had engaged in criminal activity that “SPANNED THE BETTER PART OF A DECADE OR MORE, INVOLVED NUMEROUS FICTITIOUS ENTITIES, AN ELABORATE WEB OF SHELL CORPORATIONS, AND HEAVY HANDED [treatment] OF A NUMBER [of] LESS SOPHISTICATED FINANCIALLY DEPENDENT EMPLOYEES IN THE SCHEME.” The court further found “THAT THE DEFENDANTS MAURICIO COHEN ASSOR AND LEON COHEN LEVY COMMITTED PERJURY.” The court noted that they gave false testimony concerning such matters as the ownership of the New York property, the events that transpired at the closing of its sale, the ownership of the shell corporations they controlled, the involvement of various relatives in the operation of those entities and “THE FORGING OF SIGNATURES ON A HOST OF DOCUMENTS.”
After the extent of the defendants’ misconduct before the courts became apparent as a result of the federal investigation, plaintiff brought the instant motion to strike appellants’ pleadings in August 2010. Supreme Court held a full evidentiary hearing to assess whether appellants had perpetrated a fraud upon the court. Appellants elected not to testify, and Maurice and Leon Cohen chose to rely solely on the testimony they had given at their federal trial. Testimony was received from the Habib sisters, who described a coordinated effort to deceive the courts. After hearing the testimony and reviewing the documen *23 tary evidence, Supreme Court issued an 18-page, single-spaced decision, in which it concluded, on the basis of clear and convincing evidence, that appellants had committed a fraud on the court (2011 NY Slip Op 33636[U] [2011]). In the first order appealed from, the court granted plaintiffs motion, struck appellants’ answers and directed that judgment be entered on default. Following resettlement, the second order appealed from, judgment was entered against appellants in the amount of $135,359,331.39 with prejudgment interest from which appellants also appeal.
Appellants challenge the disposition on the grounds that the court applied the wrong standard of proof in holding that they committed a fraud directed at the court warranting the striking of their pleadings and, thus, abused its discretion in imposing the sanction of judgment by default. They further contend that the court erred in directing entry of judgment without conducting an inquest. The short answer to these assertions is that the proof elicited is more than sufficient to establish that appellants engaged in an extensive scheme to suborn perjury and subvert the judicial process; and calculation of the judgment, which is predicated on a foreign judgment recognized in this jurisdiction and affirmed by this Court, is a ministerial matter requiring only computation by the Clerk of the Court (CPLR 3215 [a]).
Appellants portray the primary issue on appeal as the evidentiary standard to be applied in deciding if a fraud on the court has been committed. The parties contest whether such misconduct must be “conclusively demonstrated,” as appellants contend (citing Melcher v Apollo Med. Fund Mgt. L.L.C., 52 AD3d 244 [1st Dept 2008]).
Appellants’ discussion of Melcher places great weight on the statement that “[d]eceit warranting the striking of the answer was not conclusively demonstrated” (52 AD3d at 245). However, a cursory examination of the context in which the statement was issued reveals that it does not purport to pronounce an evidentiary standard. Rather, the purpose was to distinguish the circumstances of the matter before us from the authority cited, 317 W. 87 Assoc. v Dannenberg (159 AD2d 245, 245 [1st Dept 1990]), in which we concluded that sanctions were supported by “ ‘undisputed untruthfulness’ on the record” (quoting Smith v Malarczyk, 118 AD2d 934, 935 [3d Dept 1986] [“undisputed untruthfulness of defendant’s testimony at his examination before trial”]). The words “conclusively demonstrated” in Melcher refer to this Court’s finding in Dannenberg *24 concerning the proof of the defendant’s misconduct and is not an evidentiary standard as urged by appellants. The holding of the case, insofar as pertinent to the issue before us, is contained in the sentence immediately following: “Whether the destruction of evidence was intentional or merely negligent presents an issue for the trier of fact” (.Melcher at 245). The obvious implication is that the issue is appropriate for submission to a trier of fact, which should determine the question as a trier of fact decides most civil questions, by a preponderance of the evidence. Thus, to the extent that Melcher involves an issue to be decided in connection with striking the pleadings of a party responsible for destruction of evidence or withholding evidence, it indicates that the determination rests not on conclusive evidence but on a mere preponderance thereof.
As Supreme Court noted in its decision, “Actions for fraud upon the court are rare” (2011 NY Slip Op 33636[U], *9) — so rare that the court cited only a single New York case dealing with the subject, in which we stated, “The paramount concern of this Court is the preservation of the integrity of the judicial process” (Koschak v Gates Constr. Corp., 225 AD2d 315, 316 [1st Dept 1996] [venue “designated as a result of duplicity . . . amounts to a fraud upon the court and will not be permitted to stand”]). In this jurisdiction, “fraud upon the court” is a term used to describe the perversion of the judicial process as a result of misconduct by a party or counsel (see Baba-Ali v State of New York, 19 NY3d 627, 634 [2012], citing Black’s Law Dictionary 686 [8th ed 2004]). With respect to the imposition of sanctions for failure to comply with discovery orders, the parties have cited no New York case that recognizes any such cause of action or, more precisely, requires that fraud on the court be established before pleadings may be stricken. Furthermore, appellants neither identify any basis for distinguishing the nature of the penalty assessed against them from one authorized under CPLR 3126 nor set forth any reason why a greater quantum of proof should be required to support imposition of the penalty.
Based on the extensive evidence adduced in this matter, Supreme Court did not abuse its discretion in striking the answer (Arts4All, Ltd. v Hancock, 54 AD3d 286 [1st Dept 2008], affd 12 NY3d 846 [2009], cert denied 559 US —, 130 S Ct 1301 [2010]). The ample record is more than sufficient to demonstrate appellants’ utter disregard for the judicial process, and while no finding of fraud on the court is necessary to warrant striking the pleadings, appellants’ conduct is appropriately characterized as such.
*25 As a result of the federal prosecution of the Cohens, it was learned that they had arranged for false testimony to be given by various deposition witnesses. The Habib sisters testified that the Cohens had suborned perjury by holding planning sessions on various dates, at which they provided the sisters, Robert Maraboeuf and Allegria Achour Aich with written scripts to follow in giving deposition testimony. The scripts specified false answers that were to be provided denying the Cohens’ control of the various defendant shell entities, as well as fictitious names of persons who were purported to be in control of those entities (“Francois Lavalle,” “Jim Cox,” “Javier Schrimpf ’ and others) and the name of a person asserted to have paid the witnesses’ legal fees (one “Dahan”). Although they were instructed to destroy the scripts, Joelle Habib retained her copy and furnished it to the court. She further testified that her 2008 affidavit in support of the motion to vacate the judgment against her on default (to which this Court alluded in vacating judgment) was false because Maurice Cohen had told her what to say. Furthermore, contrary to deposition testimony that the individual defendants were all paying their own lawyer, she stated that it was Maurice Cohen who paid the fees.
Testimony was also heard that appellants had submitted a forged document in opposition to a motion by plaintiff. Habib Levy Sibony (Levy), Maurice Cohen’s brother-in-law, testified at both the criminal trial and a Florida civil action, in which plaintiff sought to encumber Florida real estate purchased with the proceeds of the sale of the New York property. Levy stated that an HSBC Bank letter portraying him as beneficial owner of Whitebury Shipping Ltd., an offshore bearer share entity used to conceal the proceeds of the original loan, had been forged.[3] He explained that, although his purported signature appeared on the document, he had never been asked whether his name could be used, he never gave Maurice Cohen or anyone else permission to use it, and he was never contacted by HSBC to verify his signature. Levy’s disavowal of the signature was corroborated by recordings made in 2007 of his conversations with a bank officer, in which the officer was heard to state that the signature did not appear to be Levy’s. Nor did Levy’s passport signature match the one on the letter.
The motion to strike appellants’ answer and enter judgment by default was originally supported by evidence garnered from *26 the federal criminal trial and the Florida civil trial: the Habib sisters’ testimony regarding the subornation of perjured deposition testimony; false 2008 affidavits submitted in connection with the motion to vacate the default judgment against the Habib sisters, Aich and Maraboeuf (which, as noted, this Court had mentioned in reversing Supreme Court’s 2008 default order); Levy’s testimony concerning his forged signature; and invoices sent to Maurice Cohen for legal representation provided to appellants, thereby contradicting Aich’s deposition testimony regarding the source of payment. This evidence was augmented as a result of the hearing conducted by the motion court. The Habib sisters gave testimony consistent with that given during the Florida federal criminal and civil proceedings. Plaintiff placed in evidence the Joelle Habib deposition script, the transcript of Levy’s testimony, affidavits from the attorney who handled the closing of the New York property, as well as deposition transcripts, bank records and portions of the record in the Florida civil action. Maurice and Leon Cohen, who were incarcerated, relied on their testimony at their criminal trial, generally denying their ownership and control of the shell entities involved in the transfer of the funds from the sale of the New York property and alleging the intervention of persons purported to be in control of those entities.
The evidence is more than sufficient to support the dismissal of appellants’ answer under criteria normally employed in this state (see e.g. Zletz v Wetanson, 67 NY2d 711, 713 [1986] [“conduct designed to yield one-sided disclosure”]; Kirkland v New York City Hous. Auth., 236 AD2d 170 [1st Dept 1997] [spoliation]). While the proof may not quite amount to “undisputed untruthfulness [on the record]” (Smith, 118 AD2d at 935), it is sufficient to constitute incontrovertible untruthfulness on the record.
Dismissal of the answer is supported by conduct that can fairly be described as “dilatory, evasive, obstructive and ultimately contumacious” (Henry Rosenfeld, Inc. v Bower & Gardner, 161 AD2d 374, 374 [1990]), designed to frustrate the motion court’s discovery orders and directives (CPLR 3124). The striking of pleadings is warranted where, as here, the conduct of the offending party “frustrates the disclosure scheme provided by the CPLR” (Henry Rosenfeld, Inc. at 375; see also Pimental v City of New York, 246 AD2d 467, 468 [1st Dept 1998], citing Herrera v City of New York, 238 AD2d 475, 476 [2d Dept 1997]). As a general principle, Supreme Court is “accorded wide *27 latitude in determining appropriate sanctions for dilatory conduct” (Rafael Diamond Jewelry Import v Underwriters at Lloyds of London, England, 189 AD2d 613, 613 [1st Dept 1993], citing Sawh v Bridges, 120 AD2d 74, 78 [2d Dept 1986], appeal dismissed 69 NY2d 852 [1987]). Dismissal of a pleading is within the exercise of discretion (CPLR 3126 [3]) and subject to reversal only for abuse thereof (Zletz, 67 NY2d at 713).
After this Court vacated the default judgment entered against appellants, Supreme Court issued an order, directing that appellants, inter alia, comply with all scheduled discovery, including the completion of depositions, and conditionally precluded all of the individual defendants unless they complied with plaintiffs document demands and interrogatories, directives that this Court held to have been proper with the exception of the production of Maurice Cohen’s personal tax return (77 AD3d at 491). For the purpose of imposing a sanction for discovery violations in this matter (CPLR 3126), it need only be observed that conspiring to provide false testimony and to mislead the court did not comply with Supreme Court’s directives, as affirmed by this Court. Thus, it is sufficient that appellant’s misconduct constitutes a gross deviation from the orderly completion of discovery as directed by Supreme Court and envisioned by CPLR article 31 (see 317 W. 87 Assoc. v Dannenberg, 159 AD2d 245 [1990], supra [submission of back-dated document and false deposition testimony as to its validity]). Because a lesser sanction has proved to be ineffectual in deterring appellants from their obdurate obstruction of the judicial process, we deem striking the answer and entry of judgment by default to be both appropriate and necessary in order to promote respect for the judicial system and to preserve the integrity of its offices. Moreover, a lesser sanction would not ameliorate the substantial harm inflicted on plaintiff by appellants’ pervasive misconduct.
Contrary to the dissent’s position, the determination of credibility of the witnesses was within the province of the hearing court. Where, as here, an evidentiary hearing is conducted by the court, “the decision of the fact-finding court should not be disturbed upon appeal unless it is obvious that the court’s conclusions could not be reached under any fair interpretation of the evidence, especially when the findings of fact rest in large measure on considerations relating to the credibility of witnesses” (Claridge Gardens v Menotti, 160 AD2d 544, 544-545 [1st Dept 1990]; see also Kronish v Koffman, 199 AD2d 136, 138 [1st Dept 1993]). Since it cannot be said that Supreme Court’s *28 evaluation of the evidence before it was unfair (see Thoreson v Penthouse Intl., 80 NY2d 490, 495 [1992]; Hardwick v State of New York, 90 AD3d 540 [1st Dept 2011]), there is no basis to depart from its findings. While appellants contend that the cooperation agreements with the federal prosecutor afforded the Habib sisters motive to give testimony favorable to the federal authorities, the hearing court fully credited their testimony.
In contrast to the evidence amassed by plaintiff, appellants’ opposition by way of affidavit was relatively sparse. Their contention, both on the motion and on appeal, is that their commission of fraud on the court has not been demonstrated by sufficient evidence. While there is no requirement that appellants’ conduct in withholding or misrepresenting evidence amount to fraud on the court, we note that, unlike the circumstance of Passlogix, Inc. v 2FA Tech., LLC (708 F Supp 2d 378, 406 [SD NY 2010]), on which appellants rely, the testimony received from the Habib sisters and Levy was corroborated. In addition, while the extensive record does not warrant resort to the doctrine of collateral estoppel, Maurice and Leon Cohen were found, for the purpose of federal sentencing guidelines, to have committed perjury during the course of criminal proceedings in relation to the same transactions at issue in this action. Thus, appellants have certainly not demonstrated the existence of any contradiction in the findings reached in the respective tribunals.
Much of appellants’ brief is devoted to disputing the trial court’s factual findings. Their discourse arrives at the conclusion that a finding of default was particularly inappropriate in view of appellants’ asserted meritorious defenses and lack of meaningful discovery. This argument in favor of reversal is remarkable because, as evinced by the record and appellate history, this litigation is notable for appellants’ failure to comply with discovery orders which Supreme Court, in its 2008 order striking the answer, found to be willful and contumacious. In reversing, this Court did not dispute the motion court’s assessment of appellants’ misconduct, reasoning only that the sanction imposed was premature. We specifically noted that our vacatur of the default judgment entered against appellants was without prejudice to any other sanctions Supreme Court deemed appropriate (62 AD3d at 577). Furthermore, in light of the evidentiary hearing conducted by Supreme Court prior to granting the instant judgment, appellants will not be heard to complain that there is an insufficient factual basis for imposing the sane *29 tion. Finally, they are hardly in a position to argue that their own failure to cooperate with Supreme Court’s attempts to regulate disclosure has resulted in the absence of meaningful discovery.
It is further contended that the default judgment entered against Maurice Cohen’s wife, Sonia, should have been vacated for lack of evidence. There was no direct evidence to show that Sonia participated in the meetings regarding the false deposition testimony. However, contrary to Sonia’s denial of knowledge of her husband’s businesses, Petetin testified that Sonia took an active role in managing the Cohens’ perfume store and that she lied about signing documents related to Maurice’s business, about the ownership of family assets and about knowing Maraboeuf, who had managed her store. Sonia committed perjury and took part in hiding the transfer of family assets. Thus, the proof supports a finding that she participated in the effort to withhold from plaintiff evidence necessary to the prosecution of its case, thereby warranting the sanction against her.
Appellants’ arguments regarding liability were properly found to be foreclosed by their default (see Rokina Opt. Co. v Camera King, 63 NY2d 728, 730 [1984]). Supreme Court correctly awarded damages without conducting a hearing, correctly found plaintiffs claims against the individual defendants viable, and correctly excluded the offsets appellants sought. The court directed entry of judgment in the amount of $135,359,331.39, together with interest from July 12, 2007 at the statutory rate, as computed by the Clerk.
The amount of damages was determinable by resorting to the judgments of the French court, as recognized in New York and as calculated first by Special Referee Marion Lewis and then by Special Referee Marilyn Dershowitz with respect to interest that accrued after April 2005 and October 2005.
The amount of tort damages against the individual defendants was properly based on the amount of the unpaid loan; notably, numerous causes of action against the individual defendants concerned the fraudulent conveyance of the loan proceeds. These claims were preserved in the 2007 settlement by a specific carve-out for tort claims against the Cohens and entities under their control; the court correctly agreed with plaintiffs argument distinguishing Bailon v Guane Coach Corp. (78 AD3d 608 [1st Dept 2010]), upon which appellants relied, as lacking a carve-out provision for liability against individuals who had settled with a corporation.
*30 The court properly denied a setoff for the value of the Florida properties, which were held in receivership rather than transferred outright to plaintiff. Thus, the Florida judgment remains unsatisfied.
Finally, the court properly awarded prejudgment interest since the fraud and fraudulent conveyance causes of action are based on allegations that appellants attempted to impair plaintiffs right to recover on a loan (see Eighteen Holding Corp. v Drizin, 268 AD2d 371, 372 [1st Dept 2000]).
Accordingly, the judgment of the Supreme Court, New York County (O. Peter Sherwood, J.), entered September 16, 2011, awarding plaintiff the principal sum of $135,359,331.39, together with $50,965,529.62 in prejudgment interest from July 12, 2007, should be affirmed, with costs. The appeals from the order of the same court (James A. Yates, J.), entered January 25, 2011, which, after a hearing, granted plaintiffs motion to strike the answers of defendants Maurice Cohen, Leon Cohen, Sonia Cohen, Robert Maraboeuf and Allegria Aich and enter a default judgment against them, and from the resettled order of the same court (O. Peter Sherwood, J.), entered September 15, 2011, should be dismissed, without costs, as subsumed in the appeal from the judgment. The appeal from the order of the same court and Justice, entered February 24, 2011, should be dismissed, without costs, as abandoned.

. Maurice and Leon Cohen are presently serving respective 10-year sentences following conviction, after a jury trial, in connection with their failure to pay federal income taxes on the proceeds.

. A more detailed account of the transaction may be found in this Court’s decision in World Bus. Ctr. v Euro-American Lodging Corp. (309 AD2d 166, 167-168 [1st Dept 2003]).

. The shares of a bearer share corporation are not registered, making its ownership particularly difficult to trace.