Catterson, J.
(dissenting). I must respectfully dissent. In my opinion, the motion court abused its discretion in granting the plaintiffs motion for a default judgment based on its finding that the defendants committed a fraud on the court. It is incomprehensible that the motion court was able to find fraud on the court simply by crediting only the testimony of two witnesses who essentially admitted that they had lied at every stage of this action. Moreover, because the defendants sharply dispute the testimony of those two witnesses and thereby raise material questions of fact, precedent mandates that the issue could only be resolved by a jury.
This case is but another chapter in the long-running saga of litigation arising out of a commercial real estate loan dating back to 1990. At that time, Societe de Banque Occidental (hereinafter referred to as SDBO), plaintiff CDR’s predecessor, became a shareholder of Euro-American Lodging Corporation (hereinafter referred to as EALC), whose purpose was to convert a Manhattan building into a Flatotel hotel, part of an interna *31 tional franchise. (CDR Créances S.A. v Euro-American Lodging Corp., 43 AD3d 45 [1st Dept 2007].) SDBO provided the financing pursuant to a 1991 loan agreement.
The relationship between SDBO and EALC soured in 1992, and SDBO refused to provide further financing for construction based on its claim that EALC was diverting funds. EALC sued in France to compel SDBO to perform, and SDBO counterclaimed to default EALC and accelerate the loan debt. In 2003, a French appeals court ordered EALC to repay the loan in the amount of $82,704,990, with interest.
In May 2003, the plaintiff commenced the first of these two New York actions against EALC, Maurice Cohen and others, claiming breach of contract, fraud and other torts based on allegations that Cohen controlled EALC and effected a series of transfers to other entities controlled by him or by his nominees in order to conceal the proceeds of the loan and avoid repaying it.
In May 2006, the plaintiff commenced the second action, naming, inter alia, the other defendants herein, including Leon Cohen (Maurice’s son), Sonia Cohen (Maurice’s wife), Robert Maraboeuf (former CEO of SNC) and Allegria Aich (signatory on several of the challenged asset transfers), as well as Joelle Habib (Maurice Cohen’s longtime secretary) and Patricia Habib Pete-tin (Ms. Habib’s sister).
In January 2008, a default was entered against Maraboeuf, Aich and Petetin, and in August 2008 judgment was entered against them for approximately $264 million plus interest. On May 28, 2008, the plaintiff moved for a default judgment against Maurice Cohen based on his alleged failure to provide discovery. Maurice Cohen cross-moved for, inter alia, a protective order. On August 7, 2008, the motion court granted the plaintiffs motion for a default against both Cohens and struck the Cohens’ answers, finding their noncompliance with discovery orders willful and contumacious.
On May 21, 2009, this Court reversed, and vacated the defaults, finding that the motion court had “improvidently exercised its discretion.” (CDR Créances S.A.S. v Cohen, 62 AD3d 576, 577 [1st Dept 2009].) Discovery resumed, and in July 2009, the Cohens were deposed for seven days creating a record of 1,031 pages. Leon Cohen denied that he or any member of his family had any direct or indirect ownership interest in any of the entities that plaintiff alleged were controlled by the Co-hens. Maurice Cohen denied involvement in the negotiations *32 and sale of the Flatotel, and denied ownership of any of the defendant entities.
Maurice Cohen provided additional deposition testimony that concluded on April 14, 2010. Leon Cohen’s deposition did not recommence because on April 15, 2010, Maurice and Leon Cohen were arrested in Florida. The federal indictment charged them with conspiracy to evade taxes on income from various corporate entities and alleged that, as part of the conspiracy, they had committed fraud on the New York court by forging documents and suborning perjury.
Habib and Petetin, who were also in the United States for depositions, entered into agreements with the Justice Department’s tax division to testify against the Cohens in exchange for the government’s promise not to prosecute them for activities in connection with their involvement with the Cohens. Habib and Petetin appeared at their depositions in New York on April 22 and 23, 2010, and asserted their Fifth Amendment rights. They also entered into a settlement agreement with the plaintiff in this case.
The tax case in Florida went to trial on September 16, 2010. Habib and Petetin testified for the government, and the Cohens were convicted of tax evasion on October 6, 2010. Habib and Petetin also testified against the Cohens in a Florida civil action where the court found that the Cohens’ subornation of perjury and submission of a forged document in the New York actions was a fraud on the court.
On October 20, 2010, the plaintiff moved to strike the defendants’ answer in the New York actions and for a default judgment pursuant to CPLR 3124 and 3126 on the grounds that the defendants defaulted on their discovery obligations and committed a fraud on the court. The motion court ordered an evidentiary hearing over the objection of the defendants who argued that, because there was a factual dispute regarding the plaintiffs allegations, the drastic relief that the plaintiff sought was improper.
The evidentiary hearing was held November 29 through December 3, 2010. Habib and Petetin testified that after this Court vacated the defaults in 2009, they met with the Cohens, Aich and Maraboeuf, and were provided with written “questionnaires” to memorize in preparation for their depositions in the New York actions. They testified that the questionnaires contained false information. They further testified that they were instructed to state at their depositions that they did not *33 work for the Cohens, and that the Cohens did not own Flatotels. They said that they were instructed not to tell their lawyers of the plan to give inaccurate testimony.
Habib testified that she was told to deny that the Cohens were behind any of the corporate entities involved in the alleged transfer of collateral, and instead to identify fictional representatives of the entities. Petetin testified that she was instructed to deny any relationship to the Cohens. Of course, ultimately the Habib sisters did not testify to any of these purported falsehoods at deposition because, as already noted, they both asserted their Fifth Amendment rights.
Habib and Petetin were impeached on cross-examination. They admitted that they had lied numerous times throughout this action including to their lawyers in France. Habib also admitted to making false statements to a French court, and failing to report a $100,000 severance payment to French tax authorities that she testified she received from Maurice Cohen. Habib and Petetin testified that they lied in affidavits because the Cohens were paying their legal fees.
Habib and Petetin further acknowledged that, during the tax trial in Florida, they had settled with the plaintiff which agreed not to pursue its claims against them so long as they testified against the defendants. Habib and Petetin also admitted that the plaintiff had agreed to pay their legal fees and expenses.
The defendants submitted the sworn statements of Maurice and Leon Cohen, Aich, and Maraboeuf in which they expressly and emphatically denied that they were part of any agreement to testify falsely. The Cohens also submitted affidavits and the defendants’ testimony from the Florida criminal trial wherein they denied the allegations against them.
The motion court credited Habib’s and Petetin’s entire testimony and concluded that Aich and Maraboeuf “followed the perjurious scripts and repeated the Cohens’ false directives in their depositions.” (2011 NY Slip Op 33636[U], *13 [2011].) The court was “convinced that [the representatives of the entities] were conscious fabrications, created by the Cohens to meet the exigencies of the situation and to obstruct the Court’s truth-finding process.” {Id. at *12.)
The court concluded that “striking defendants’ pleadings and dismissing the action is the appropriate sanction for the Co-hens’ bad faith and deliberate intent to deceive the Court.” {Id. at *17.)
*34 In my opinion, for the reasons set forth below, this was plain error. The motion court abused its discretion in granting the plaintiffs motion for a default judgment. As a threshold matter, it should be noted that the court referred to the evidentiary hearing as a Melcher hearing, citing to Melcher v Apollo Med. Fund Mgt. L.L.C. (52 AD3d 244 [1st Dept 2008].) However, the motion court then proceeded to ignore the standard set by this Court in that case, namely that “[d]eceit warranting the striking of the answer” must be “conclusively demonstrated.” (52 AD3d at 245 [emphasis added].) Instead, the motion court adopted the “clear and convincing” standard set by some federal courts to find that the defendants perpetrated a fraud on the court. Melcher’s requirement of a “conclusive” demonstration of deceit is mandated by precedent. (See 317 W. 87 Assoc. v Dannenberg, 159 AD2d 245 [1st Dept 1990]; see also Smith v Malarczyk, 118 AD2d 934 [3d Dept 1986].) In these cases, fraud and deceit on the court is established only because it is “undisputed” or “admitted.” (See Smith at 935 [“(g)iven the undisputed untruthfulness of defendant’s testimony at his examination before trial that there were no witnesses (to the accident), . . . the trial court’s refusal to impose sanctions . . . constituted reversible error”] [emphasis added].) In Dannenberg, the “undisputed untruthfulness” involved offering a fraudulent document to the court under an affidavit, which fraudulence was subsequently “admitted” by the defendant. (159 AD2d at 245 [emphasis added].) Thus, Melcher’s requirement of a “conclusive” demonstration of alleged deceit comports with a heightened standard of proof where, as the defendants assert, “conclusive” ordinarily means “putting an end to debate or question especially by reason of irrefutability.”
More recently, in Kasoff v KVL Audio Visual Servs., Inc. (87 AD3d 944 [1st Dept 2011]), this Court determined that plaintiffs motion to strike should have been granted on the grounds that “[t]he record establishes that defendants’ counsel actively interfered with discovery . . . [and] [defendants also admittedly altered a commission report.” (87 AD3d at 945 [emphasis added].) Hence, Kasoff also stands for the proposition that deceit must be admitted or undisputed when a plaintiff has moved to strike an answer rather than just for the proposition the majority propounds, namely, that it is an appropriate sanction when the fraudulent scheme is “extensive.” In any event, the plaintiff here does not cite to any legal authority that supports the proposition that a motion to strike an answer or a mo *35 tion for a default may be granted in a situation where the allegations of fraud and deceit on the court are the subject of a bona fide dispute.
Indeed, the facts of Melcher are instructive: In that case, the plaintiff moved to strike the defendants’ answer for “spoliation of evidence and deceit related to such.” (Melcher v Apollo Med. Fund Mgt. LLC, 2007 NY Slip Op 33803[U], *4 [Sup Ct, NY County 2007].) At issue was “key evidence” of a document that plaintiff alleged was destroyed intentionally by one of the defendants to prevent forensic ink testing which would have shown the document to be fraudulent. (Id.) The defendant disputed the allegation and asserted that the document was legitimate but “burned by accident, in his kitchen.” (Id.)
The motion court denied the plaintiffs motion, and this Court affirmed holding that “[d]eceit warranting the striking of the answer was not conclusively demonstrated.” (Melcher, 52 AD3d at 245.) Similarly, in this case, in my opinion, “deceit warranting the striking of the answer” or a default judgment was not conclusively demonstrated. The fraud on the court allegedly perpetrated by defendants did not go undisputed, and was certainly not admitted. On the contrary, the defendants strenuously denied the allegations of deceit and fraud in their entirety. They challenged the witnesses’ motives for testifying against them; they asserted that the “scripts” about which Habib and Petetin testified could have served other purposes such as aiding in the preparation of depositions; they argued that Habib and Petetin had an incentive to offer false adverse testimony against the defendants.
Indeed, the record supports the defendants’ contentions to the extent that Habib and Petetin acknowledged at the evidentiary hearing that they testified against the defendants in return for the federal prosecutors dropping charges against the sisters. In my opinion, this was sufficient to preclude a finding of fraud on the court as a matter of law.
As in Melcher, the defendants raised a question of material fact as to the fraudulent conduct alleged, and the issue should have been presented to a jury. (Melcher, 52 AD3d at 245 [whether defendant perpetrated a fraud on the court by destroying evidence and lying about it or “(w)hether the destruction of evidence was . . . merely negligent presents an issue for the trier of fact”].)
Despite this clear precedent, the motion court emphasized that it had arrived at its finding of fraudulent conduct by credit *36 ing the testimony of the same two witnesses who admitted they had lied in this action before a French court; admitted they had lied to their lawyers; admitted to lying on affidavits for the court; acknowledged asserting their Fifth Amendment rights at depositions ordered by the motion court, and conceded they had testified against the defendants in Florida in return for a deal with the government.
In my view, therefore, the motion court clearly abused its discretion when it allowed the plaintiff to prevail on a motion for default under circumstances that would be insufficient to support a motion for summary judgment. Courts in other jurisdictions, in similar circumstances, have declined to grant a motion for default. (See e.g. Gilbert v Eckerd Corp. of Fla., Inc., 34 So 3d 773, 776 [Fla Dist Ct App 2010] [“if the motion to dismiss for fraud would not likewise survive a motion for summary judgment, the trial court should presume the matter not subject to dismissal”]; Rockdale Mgt. Co., Inc. v Shawmut Bank, N.A., 418 Mass 596, 601, 638 NE2d 29, 33 [1994, O’Connor, J., concurring] [“(t)he precious right of trial by jury is jeopardized (if a court can strike pleadings) . . . after measuring a party’s credibility and without the benefit of an admission”].)
In light of the magnitude of the damages at issue in this case, and because I believe that the defendants succeeded in raising an issue of fact that must be resolved by a jury, I would reverse the January 25, 2011 order striking defendants’ answers and granting a default judgment on liability, and remand for further proceedings.
Gonzalez, EJ., Renwick and Richter, JJ., concur with Tom, J.; Catterson, J., dissents in a separate opinion.
Judgment, Supreme Court, New York County, entered September 16, 2011, affirmed, with costs, and order, same court, entered January 25, 2011, and from the resettled order, same court, entered September 15, 2011, dismissed, without costs, as subsumed in the appeal from the judgment. Order, same court and Justice, entered February 24, 2011, dismissed, without costs, as abandoned.